Martha Hill Jamison, Justice
Appellant Manuel Asuncion Pena appeals his conviction for aggravated sexual assault of a child, contending in six issues that the trial court (1) abused its discretion in admitting evidence that appellant sexually assaulted the complainant more than once and committed other acts of violence against the complainant because the State failed to give proper notice of its intention to introduce the evidence; (2) abused its discretion in failing to grant a mistrial because the State commented on appellant's Fifth Amendment right to remain silent and because the State "struck at appellant over counsel's shoulders" during closing argument; (3) abused its discretion in admitting extraneous offense evidence during the punishment phase of trial in violation of appellant's Sixth Amendment right to confront his accuser; and (4) erred in submitting a reasonable doubt instruction in the jury charge. We affirm.
Background
Thirteen-year-old R.A. lived with three of her siblings, her mother Maria, and appellant. Maria left home for over a month to visit family in El Salvador. R.A. testified that one evening while her mother was gone, appellant entered R.A.'s bedroom, forcibly carried her to his room, and sexually assaulted her. Throughout that month, appellant sexually assaulted R.A. approximately ten times.
After Maria returned from El Salvador, R.A. found out she was pregnant. She told Maria that someone else was the father. R.A. continued living at home with Maria and appellant until after she had the baby. Maria and appellant eventually ended their relationship.
Approximately 10 years later, R.A. heard appellant "harassing" Maria on the phone. R.A. decided to tell Maria that appellant was the father of the child. R.A. eventually reported the sexual assaults to the police.
Officer Resnick investigated and collected DNA samples from R.A., her child, and appellant. The DNA analyst confirmed that R.A. was the child's mother and appellant could not be excluded as the child's father. According to the analyst, the probability of appellant's paternity was "greater than 99.99 percent."
The jury found appellant guilty of aggravated sexual assault of a child. During the punishment phase of trial, Officer Huff testified about an extraneous offense purportedly committed by appellant. Huff was leaving an apartment complex when someone approached him to report an assault. Huff went to a two story apartment where the assault was in progress. He heard screaming in Spanish and what sounded like an assault. After pounding on the door, Huff kicked it open. Appellant came to the top of the stairs, looked down, said "I have no problem with the police," and walked out of sight. When backup arrived, Huff and another officer entered the apartment, went upstairs, and observed appellant sitting on a bed. After arresting appellant, Huff went into a bathroom and found a woman and a man. The woman *248 was crying and had blood on her face. She told Huff she was afraid of appellant and he threatened to kill her if she talked to the police. She said they had gotten into an argument about breaking up and appellant assaulted her. The jury sentenced appellant to thirty years' confinement.
Discussion
I. No Harm from State's Purported Failure to Provide Adequate Notice of Intention to Introduce Evidence of Extraneous Offenses
In two issues, appellant asserts the trial court abused its discretion by admitting evidence of appellant's extraneous offenses against R.A. Appellant argues that the trial court abused its discretion by admitting evidence that appellant sexually assaulted R.A. more than once because the State purportedly did not give appellant adequate notice of its intention to introduce the evidence under Code of Criminal Procedure article 38.37. Appellant further complains that the trial court admitted evidence that appellant committed acts of violence toward R.A. when the State purportedly did not give appellant adequate notice of its intention to introduce such evidence under Rule of Evidence 404(b). We analyze these two related issues together.
We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. De La Paz v. State , 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) ; Ripstra v. State , 514 S.W.3d 305, 317 (Tex. App.-Houston [14th Dist.] 2016, pet. ref'd). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. Moses v. State , 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) ; Ripstra , 514 S.W.3d at 317.
Article 38.37 requires the State to give a defendant notice of the State's intention to introduce evidence of certain other offenses committed by the defendant, including sexual assault of a child, not later than the 30th day before trial. Tex. Code Crim. Proc. art. 38.37 §§ 2(1)(D), 3. Under rule 404(b), evidence of a "crime, wrong, or other act" is not admissible to prove a person's character. Tex. R. Evid. 404(b)(1). But such evidence may be admissible for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). The State is required to provide reasonable notice of its intent to introduce such evidence "[o]n timely request by a defendant in a criminal case."[1] Id.
We need not decide whether the trial court erred in admitting the extraneous offense evidence because we conclude any error was harmless. Error in admitting evidence in violation of the notice provisions of article 38.37 and rule 404(b) is non-constitutional error. Lara v. State , 513 S.W.3d 135, 142-43 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (citing Hernandez v. State , 176 S.W.3d 821, 824-25 (Tex. Crim. App. 2005) (noting error in the admission of evidence in violation of the notice requirement of rule 404(b) constitutes non-constitutional error), and Villarreal v. State , 470 S.W.3d 168, 176-77 (Tex. App.-Austin 2015, no pet.) (concluding that any error in the admission of evidence in violation of article 38.37 's notice provision constitutes non-constitutional error) ). Thus, we will not conclude an error is harmful unless it had a substantial and injurious effect or influence in determining the jury's verdict. Id. at 143. In considering whether the trial court's error in admitting extraneous offense evidence based *249 on the State's failure to provide adequate notice was harmful, we bear in mind the purpose of the notice provisions of article 38.37 and rule 404(b), which is to avoid surprise and to allow the defendant to mount an effective defense. See Hernandez , 176 S.W.3d at 825-26 ; see also Lara , 513 S.W.3d at 143 ; Splawn v. State , 160 S.W.3d 103, 111-12 (Tex. App.-Texarkana 2005, pet. ref'd).
Article 38.37 Notice . Appellant concedes that the State gave him notice under article 38.37 that it intended to present evidence of additional instances of sexual assault committed by appellant against R.A. The notice was filed by the State in the trial court more than thirty days before trial and provided that the State intended to present evidence under article 38.37 that, among other things, "on or about 7/31/2004 and on other, multiple occasions, pursuant to a continuing course of conduct, the Defendant did intentionally and knowingly" engage in at least twelve specific instances of sexual assault against R.A. Appellant contends that the State was required and failed to provide specific dates, specific locations, and unique identifying information for each purported sexual assault.
Not only does the State's article 38.37 notice list twelve extraneous instances of sexual assault committed by appellant against R.A., but the State's complaint also references numerous sexual assaults during 2004. In the complaint, Officer Resnick attested that she had reason to believe that appellant committed aggravated sexual assault of R.A. "on or about July 31, 2004" at the home of appellant and R.A. in Houston, Texas. Resnick also attested that R.A. recounted numerous sexual assaults that "occurred for about a month" in appellant's bedroom while R.A.'s mother was in El Salvador. The State filed its complaint six months before trial. Appellant thus had been provided with allegations in the complaint and the article 38.37 notice well in advance of trial. Appellant's counsel told the trial court that he was aware of the alleged extraneous offenses.
Because appellant was aware of the State's allegation that appellant sexually assaulted R.A. in appellant's bedroom numerous times during a limited timeframe-one month in 2004 while Maria was away-we cannot conclude on this record that appellant was harmed by the State's failure to include more specific information in its article 38.37 notice. See Lara , 513 S.W.3d at 143. Appellant did not articulate below or on appeal how his trial strategy would have been different if he had been given more specific information regarding dates, locations, and unique identifying information for each purported sexual assault that he asserts should have been included in the article 38.37 notice. See ids="12372455" index="12" url="https://cite.case.law/sw3d/513/135/#p142">id.
Rule 404(b) Notice . Appellant also concedes that the State provided notice under rule 404(b) that it intended to present evidence that appellant "assaulted [R.A.] multiple times during the time and course of being members of the same household." Appellant contends that the notice was overly broad "[i]n light of the immense timeframe and numerous houses, apartments, and different states in which [a]ppellant and R.A. were members of the same household" for over a decade. However, the only pertinent evidence cited by appellant that was presented to the jury during the guilt-innocence phase of trial was Maria's testimony that after she returned from El Salvador "there was a lot of violence between [appellant] and [R.A.]."[2] Appellant objected to this testimony *250 on several grounds, including on the basis that the State failed to give adequate notice under rule 404(b) of its intention to present evidence that appellant "would attack [R.A.]." The trial court overruled appellant's objection.
Maria then testified that after she returned from El Salvador, R.A. became very angry. She would become especially angry when Maria asked her about the father of the baby. Maria further testified that R.A. left home several times and eventually left and did not return.
We conclude that this evidence does not support an inference that Maria observed appellant attacking R.A. Therefore, Maria's testimony in this context does not implicate an extraneous offense committed by appellant. See Manning v. State , 114 S.W.3d 922, 926-27 (Tex. Crim. App. 2003) ("An extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers."). Accordingly, appellant's complaint about the adequacy of the State's rule 404(b) notice is without merit. Further, appellant has not demonstrated how the State's rule 404(b) notice lacked the requisite information to allow appellant to mount an effective defense. See Hernandez , 176 S.W.3d at 826 (concluding that defendant failed to establish "how his defense strategy might have been different [had the State provided reasonable notice] or how [the] defense was 'injuriously' affected by the State's failure to provide reasonable notice" and thus any error in admitting extraneous offense evidence was harmless).
Conclusion . Based on this record, we cannot conclude that appellant was harmed by the State's alleged failure to provide adequate notice under article 38.37 and rule 404(b). See Hernandez , 176 S.W.3d at 826 ; Lara , 513 S.W.3d at 143. We overrule appellant's first and third issues.
II. No Abuse of Discretion in Denying Requests for Mistrial
In two additional issues, appellant complains of the trial court's failure to grant a mistrial. First, appellant contends that the State, in asking a witness whether appellant made a post-arrest statement to the police, improperly commented on his right to remain silent under the Fifth Amendment. Although the trial court sustained appellant's objection to the question and instructed the jury to disregard it, appellant asserts that the trial court abused its discretion in refusing to grant a mistrial. Second, appellant complains about the prosecutor's statement in closing argument that "the [d]efense has only got so much to work with." The trial court sustained appellant's objection on the basis that the statement improperly criticized defense counsel and instructed the jury to disregard the statement, but denied appellant's request for a mistrial.
A mistrial is appropriate only in "extreme circumstances" for a narrow class of prejudicial and incurable errors. Ocon v. State , 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Ordinarily, a prompt instruction to disregard is sufficient to cure error associated with an improper question and answer. Ovalle v. State , 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). As to jury argument, mistrial is the proper remedy only when the improper argument is so inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. See Archie v. State , 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). On appeal, we generally presume that the jury followed the trial court's instructions.
*251 Thrift v. State , 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). This presumption is refutable, but the appellant must rebut the presumption by pointing to evidence in the record indicating that the jury failed to follow the trial court's instructions. Id. Whether an error requires a mistrial must be determined by the particular facts of the case. Ocon , 284 S.W.3d at 884.
We review a trial court's denial of a mistrial for an abuse of discretion. Id. We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. Id. We must uphold the ruling if it was within the zone of reasonable disagreement. Id. In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. Crayton v. State , 463 S.W.3d 531, 535 (Tex. App.-Houston [14th Dist.] 2015, no pet.) (citing Hawkins v. State , 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ); see also Mosley v. State , 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (listing factors to determine harm from improper jury argument).
Question Regarding Appellant's Post-Arrest Silence . Appellant contends that the State's question to Resnick asking "to your knowledge, was a statement ever able to be gotten from the defendant in this case?" was an improper comment on appellant's right to remain silent under the Fifth Amendment and the trial court should have granted a mistrial.[3] A comment on a defendant's post-arrest silence violates the Fifth Amendment prohibition against self-incrimination. Dinkins v. State , 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (citing Doyle v. Ohio , 426 U.S. 610, 617-18, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and Miranda v. Arizona , 384 U.S. 436, 468, n.37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ). Such a comment is akin to a comment on the defendant's failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right. Id.
As discussed, we look to the particular facts of the case and the context to determine whether an instruction to disregard cured any error. See Ovalle , 13 S.W.3d at 783-84 ; see also Ocon , 284 S.W.3d at 884. Here, Resnick did not answer the question, so the jury never heard whether appellant made a statement, and the prosecutor made no further mention and asked no further questions pertaining to appellant's silence. Thus, the prosecutor's question was brief and insignificant. See Archie , 221 S.W.3d at 700 ; see also Crayton , 463 S.W.3d at 535. As discussed, the trial court instructed the jury to disregard the question. Appellant has not pointed to evidence and we have found nothing in the record to suggest that the jury failed to follow the trial court's instruction. Accordingly, appellant has not rebutted the presumption that the jury followed the trial court's instruction. See Thrift , 176 S.W.3d at 224. Regarding the certainty of conviction absent the prosecutor's question, the State presented overwhelming evidence that appellant was guilty of aggravated sexual assault, including DNA evidence that established appellant as the father of R.A.'s child to a "greater than 99.99 percent" certainty. See Crayton , 463 S.W.3d at 535. We conclude that in sustaining appellant's objection and instructing the jury as it did, the trial court sufficiently ameliorated any potential harm in the prosecutor's question. See Archie , 221 S.W.3d at 700. The trial court did not *252 abuse its discretion in denying appellant's request for a mistrial as to the prosecutor's question.
State's Comment during Jury Argument . Appellant argues that the trial court abused its discretion in refusing to grant a mistrial after the prosecutor said during closing argument that "the [d]efense has only got so much to work with," purportedly striking at appellant over the shoulders of defense counsel.
Permissible jury argument is limited to four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. Dinkins , 894 S.W.2d at 357. Generally, when an argument falls outside of these areas, error occurs. Id. However, an instruction to disregard the argument generally cures the error. Id. Only offensive or flagrant error will mandate reversal after a trial court's instruction to disregard improper jury argument. Phillips v. State , 130 S.W.3d 343, 356 (Tex. App.-Houston [14th Dist.] 2004), aff'd , 193 S.W.3d 904 (Tex. Crim. App. 2006).
When a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defense attorney in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel. Id. at 355. This can be seen, for example, when the prosecutor argues that defense counsel has manufactured evidence, suborned perjury, accepted stolen money, or represented criminals. Id. This type of argument is improper. Dinkins , 894 S.W.2d at 357.
During closing argument, the prosecutor discussed the DNA evidence showing that appellant was the father of appellant's child and stated the following: "When you saw the [DNA] profile up on the screen and [the analyst] went through it all step by step, one by one by one they matched. And they matched, and they matched. Now, the Defense has only got so much to work with." The trial court promptly sustained appellant's objection on the basis that the prosecutor was "criticizing ... defense counsel" and instructed the jury to "disregard the last comment please and consider it for no purpose."
Presuming without deciding that the prosecutor's comment improperly struck appellant over defense counsel's shoulders, we conclude the trial court's instruction to disregard the comment cured any error. The comment was not inflammatory and merely emphasized the strength of the DNA evidence. See Phillips , 130 S.W.3d at 356. Moreover, appellant has pointed to no evidence and we have found nothing in this record to suggest that the jury failed to follow the trial court's instruction. See ids="9275483" index="50" url="https://cite.case.law/sw3d/130/343/#p356">id. Also, again considering the certainty of conviction absent the prosecutor's comment, we conclude that in sustaining appellant's objection and instructing the jury as it did, the trial court sufficiently ameliorated any harm. See Archie , 221 S.W.3d at 700 ; see also Phillips , 130 S.W.3d at 356. The trial court did not abuse its discretion in denying appellant's request for a mistrial as to the prosecutor's comment in closing argument.
Conclusion . Concluding that the trial court did not abuse its discretion in denying appellant's requests for a mistrial, we overrule appellant's second and fourth issues.
III. No Harm in Admitting Alleged Testimonial Statement from Absent Witness
In his next issue, appellant complains of the trial court's admission of evidence during the punishment phase of trial involving an extraneous offense committed by appellant.
*253 Specifically, appellant argues that the trial court's admission of Officer Huff's testimony regarding the statement made by appellant's former girlfriend that appellant assaulted her violated appellant's right to confront his accuser under the Sixth Amendment.
Testimonial Statements . The Sixth Amendment to the United States Constitution affords a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This provision, known as the Confrontation Clause, prohibits the admission of "testimonial" statements by a witness who does not appear at trial, unless the witness was unavailable to testify and the defendant had a previous opportunity to cross-examine her. Wilson v. State , 296 S.W.3d 140, 145 (Tex. App.-Houston [14th Dist.] 2009, pet. ref'd) (citing Crawford v. Washington , 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ).
In Crawford v. Washington , the Supreme Court explained that generally a statement should be considered "testimonial" if it constitutes a solemn declaration made for the purpose of establishing some fact. Amador v. State, 376 S.W.3d 339, 342 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd) (citing Crawford , 541 U.S. at 51, 124 S.Ct. 1354 ). While the Court declined in Crawford to provide a comprehensive definition, it advised that certain classes of "core" statements should be regarded as testimonial, including (1) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and (2) statements taken by police officers "in the course of interrogations." Id. (citing Crawford , 541 U.S. at 51-52, 124 S.Ct. 1354 ).
Nevertheless, not all statements taken by police officers during interrogation are testimonial. Id. Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Id. (citing Davis v. Washington , 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ). They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency. Id. (citing Davis , 547 U.S. at 822, 126 S.Ct. 2266 ). We objectively evaluate the circumstances under which the statement is taken to determine whether the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. See ids="3275498" index="71" url="https://cite.case.law/us/547/813/#p822">id. We review constitutional legal rulings de novo, including whether a statement is testimonial, but we defer to the trial court on issues of historical fact.[4] Id. at 343.
Appellant did not have an opportunity to cross-examine his former girlfriend at trial. Therefore, the admissibility of her statement, as offered through Huff's testimony, turns upon the threshold question of whether the statement was testimonial. See Wilson , 296 S.W.3d at 145 (citing Vinson v. State , 252 S.W.3d 336, 338 (Tex. Crim. App. 2008) ). The State argues that the girlfriend's statement was obtained by Huff to address an ongoing emergency-the reported assault-and thus was not testimonial. See Amador , 376 S.W.3d at 343. Appellant asserts that the statement was testimonial because when the girlfriend made it, appellant was already in handcuffs in the back of a police car and thus any danger had already dissipated. See ids="7123716" index="75" url="https://cite.case.law/sw3d/376/339/#p342">id. (noting statements are testimonial *254 when circumstances objectively indicate that there is not an ongoing emergency).
In deciding whether there was an ongoing emergency when a statement is made, we consider several non-exclusive factors: (1) whether the event was still ongoing; (2) whether the questions sought to determine what was presently happening, as opposed to what had happened in the past; (3) whether the primary purpose of the questioning was to render aid, and not simply memorialize a possible crime; (4) whether the questioning was conducted in an environment that was tranquil and safe; and (5) whether the events were deliberately retold in a step-by-step fashion. See Wilson , 296 S.W.3d at 146.
Here, appellant was already in custody when Huff discovered the girlfriend in the bathroom of the apartment with blood on her face and questioned her. Thus, the event was no longer ongoing. Huff's questions were directed toward the past, albeit the recent past: what had happened and how the girlfriend had been injured. The purpose of the questioning likely was not only to render aid by assessing the extent of the girlfriend's injuries and her need for assistance but also to memorialize the crime. The environment was safe, because appellant was handcuffed in the back of the squad car, but not necessarily tranquil. The girlfriend was crying and shaking while she spoke to Huff. In that connection, we cannot say that the girlfriend provided a deliberate step-by-step statement to Huff. See id. at 147. However, because appellant was securely in police custody when the girlfriend made her statement, the emergency situation likely had ended at the time of the interview. See id. at 148. We need not decide whether it had, because we conclude beyond a reasonable doubt that the admission of the statement did not harm appellant. See ids="7297757" index="79" url="https://cite.case.law/sw3d/296/140/#p145">id.
Harmless Error Analysis . Presuming without deciding that the statement was erroneously admitted, such a violation of a defendant's right to confrontation is subject to a harmless error analysis. See ids="7297757" index="80" url="https://cite.case.law/sw3d/296/140/#p145">id. at 149. We must affirm the conviction if we determine beyond a reasonable doubt that the alleged error did not contribute to appellant's punishment. Id. We consider (1) the importance of the testimonial statement to the State's case; (2) whether the testimonial statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the testimonial statement on material points; and (4) the overall strength of the State's case. See ids="7297757" index="82" url="https://cite.case.law/sw3d/296/140/#p145">id. We may also consider the source and nature of the error, the extent of the State's emphasis on the evidence, and the relative weight the jury may have assigned to the evidence as compared with the balance of the remaining evidence relevant to the issue of punishment. Id. Finally, we may also consider any other factor contained in the record that might shed light on the probable impact of the evidence on the minds of average jurors. Id.
We do not simply decide whether the jury verdict enjoyed evidentiary support. Id. Instead, the question is whether the alleged constitutional error was actually a contributing factor in the jury's deliberations in arriving at a verdict. Id. Thus, Crawford error does not require reversal unless there is a reasonable possibility that, within the context of the entire trial, the perceived error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." Id.
After reviewing these considerations, we are persuaded beyond a reasonable doubt that the punishment assessed by the jury would have been the same even if the trial court had not admitted the girlfriend's statement about appellant assaulting *255 her. See ids="7297757" index="88" url="https://cite.case.law/sw3d/296/140/#p145">id. First, the statement was not very important to the State's case on punishment in light of the other extraneous offenses introduced by the State during the punishment phase of trial. The State offered evidence of appellant's prior convictions for carrying a weapon, driving while intoxicated, and driving while intoxicated with a prior conviction. More importantly, the State introduced evidence of numerous other assaults committed by appellant.
Maria testified that appellant, on numerous occasions, assaulted her, R.A., and R.A.'s 10 year old brother and would threaten to kill Maria. For example, at a party, appellant kicked Maria while they were outdoors, threw her down on concrete, broke a window to follow her into the house when she fled, and continued to kick and slap her. She was required to undergo surgery as a result of her injuries. Appellant also assaulted R.A.'s brother once when he (the brother) tried to stop appellant from attacking R.A. Appellant threw him aside, hit him in the chest, and knocked the wind out of him. Appellant also would "whip" R.A.'s brother on the back with a belt, one time leaving him bruised to the point that he nearly bled. Occasionally, appellant would hit the boy "for no reason when he was drunk."
Second, although the girlfriend's statement was not cumulative of other evidence, there was evidence corroborating the statement. When Huff approached the apartment, he heard yelling and screaming and "what sounded like a physical assault." After Huff forced open the apartment door, he could hear a woman and a man yelling. Appellant came to the top of the stairs and apparently tried to stall Huff by saying "I have no problem with the police." After back-up arrived, officers entered the apartment, and Huff found appellant with blood on his pants, the girlfriend with blood on her face and shirt, and blood in several areas inside and outside the apartment.[5] The girlfriend was "crying, ... visibly upset[,] shaking, trembling and nervous."
Third, the overall strength of the State's case for punishment was strong. The State presented graphic testimony from R.A. about the nature of appellant's repeated and violent sexual assaults on her when she was thirteen years old. More significantly, the State presented DNA evidence establishing that appellant is the father of R.A.'s child. The complainant's statement established "little, if anything, negative about appellant that was not also well established by the properly admitted evidence." See ids="7297757" index="89" url="https://cite.case.law/sw3d/296/140/#p145">id. at 150.
Finally, the State did not mention the girlfriend's statement during closing argument, thus indicating it was not important to the State's case on punishment. See ids="7297757" index="90" url="https://cite.case.law/sw3d/296/140/#p145">id. at 149. The jury assessed punishment at 30 years' imprisonment out of a possibility of 99, despite having heard evidence of (1) appellant's numerous sexual assaults of R.A. described in graphic detail; (2) numerous physical assaults of Maria, R.A., and R.A.'s brother; and (3) prior convictions for carrying a weapon and driving while intoxicated. Thus, there is no indication that the admission of the girlfriend's statement about appellant assaulting her increased the severity of punishment assessed by the jury. See ids="7297757" index="91" url="https://cite.case.law/sw3d/296/140/#p145">id. at 150.
After considering all of the above-referenced harmless error factors, we conclude there is no reasonable probability that the trial court's alleged Crawford error *256 "moved the jury from a state of non-persuasion to one of persuasion" on the issue of appellant's punishment. See ids="7297757" index="92" url="https://cite.case.law/sw3d/296/140/#p145">id. at 151. Therefore, we conclude that the trial court's admission of the girlfriend's statement did not result in harmful error. We overrule appellant's fifth issue.
IV. No Abuse of Discretion in Submitting Jury Charge Instruction
In his final issue, appellant contends the trial court abused its discretion in submitting the following instruction to the jury: "The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act." Appellant contends that this instruction improperly defined reasonable doubt. See Paulson v. State , 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) ("We find that the better practice is to give no definition of reasonable doubt at all to the jury.").
Our first duty in analyzing a jury charge issue is to decide whether error exists.[6] Ngo v. State , 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The Court of Criminal Appeals has addressed the issue presented here and held that a trial court did not abuse its discretion in submitting language nearly identical to the language presented in the jury charge here. See Woods v. State , 152 S.W.3d 105, 114-15 (Tex. Crim. App. 2004) (holding trial court did not abuse discretion in submitting the following language: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt."). In acknowledging that it had previously held that "the better practice is to give no definition of reasonable doubt at all to the jury," the high court noted that the "instruction in the instant case did not contain" the instructions previously criticized by the court. Id. (citing Paulson , 28 S.W.3d at 572-73 ). Accordingly, the trial court did not abuse its discretion in submitting the challenged instruction. Id. ; see also Mays v. State , 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) ; Zavala v. State , 401 S.W.3d 171, 181 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd) ("[T]he Texas Court of Criminal Appeals has determined repeatedly that including this instruction in a jury charge is not an abuse of discretion.").
We conclude that the trial court did not err in submitting the above instruction. We overrule appellant's sixth issue.
Conclusion
Concluding that (1) appellant was not harmed from the State's purported failure to provide adequate notice of its intention to introduce evidence of extraneous offenses; (2) the trial court did not abuse its discretion in denying appellant's requests for a mistrial; (3) appellant was not harmed from the trial court's admission of an alleged testimonial statement from a witness who did not appear at trial; and (4) the trial court did not abuse its discretion in submitting a jury instruction on reasonable doubt, we affirm the judgment of the trial court.

Appellant requested the notice in a timely manner.

The article 38.37 and rule 404(b) notice provisions both deal only with evidence introduced during the guilt-innocence phase of trial. Splawn , 160 S.W.3d at 111.

Under the Fifth Amendment to the United States Constitution, "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

We note that the trial court made findings that the complainant's statement was an excited utterance but did not make a finding as to whether it was testimonial.

There was no evidence presented, similar to the blood on appellant's pants, that implicated the other man in the apartment as the person who assaulted the girlfriend. Huff testified that police officers eventually released the second man.

Then, if we find error, we analyze that error for harm. Ngo v. State , 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).