**Affirmed and Memorandum Opinion filed July 9, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00092-CR

**ALONZO COLUMBUS JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1443179**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant Alonzo Columbus Johnson guilty of sexual assault of a child under 17 years of age. *See* Tex. Penal Code Ann. § 22.011 (Vernon 2019). The trial court sentenced Appellant to 60 years' confinement. In two issues, Appellant asserts (1) the trial court erred by admitting into evidence an exhibit showing text messages between Appellant and Complainant; and (2) he received ineffective assistance of counsel. For the reasons below, we affirm.

BACKGROUND

Appellant was charged with the sexual assault of a child and proceeded to a jury trial in January 2018.

Complainant, Appellant's step-daughter, testified at Appellant's trial. According to Complainant, she moved in with Appellant and her mother when she was 11 years old and Appellant sexually assaulted her for the first time when she was 12. Discussing the first sexual assault, Complainant said Appellant texted her and told her to come into the bedroom to watch television. Complainant lay on the bed with Appellant and Complainant's mother. While Complainant's mother was sleeping, Complainant said Appellant "rubbed [her] breasts" and "vaginal area," stopping when Complainant's mother woke up.

Complainant testified with respect to additional sexual incidents that occurred afterwards, stating that Appellant repeatedly coerced her to engage in oral and vaginal sex. Complainant said the sexual incidents continued for several years, occurring approximately once or twice a week.

As she got older, Complainant said Appellant was "more demanding" for sexual activities. Complainant said Appellant would text her telling her that she "owe[d] him" if she "asked him to go hangout with friends after school or go hangout with the guy [she] was talking to." Complainant said she and Appellant would "text back and forth about . . . calling a bargain where he would demand sex for something that [she] wanted[.]" Admitted into evidence during Complainant's testimony was State's exhibit 18, which shows in a back-and-forth format text messages between a phone number associated with Appellant and a phone number associated with Complainant.

Complainant told her mother about the sexual assaults in May 2014.

2

Complainant said she was "afraid" to tell her mother because she feared "[her mother] wasn't going to believe [her]." Complainant also said she was afraid her family "would have been homeless and [had] no place to go because . . . [Appellant] wasn't going to pay the bills if [she] was to come out and tell." Complainant and her mother reported the sexual assault allegations to Complainant's school principal.

Officer Diana Rojas investigated Complainant's sexual assault allegations and testified regarding the substance of the allegations and the subsequent investigation. According to Officer Rojas, she collected Complainant's phone and saw "text messages going from [Complainant's] phone number to [Appellant's] phone number that seemed to be a little suspicious." Describing the messages' content, Officer Rojas said they "seemed to suggest sexual activities and then a lot of them also went along with what [Complainant's] original story was."

Officer Rojas also testified regarding her September 2014 interview with Appellant, during which she asked him about the suspicious text messages she saw on Complainant's phone. Officer Rojas said Appellant initially was "pretty calm" but, when she asked him about the text messages, he became "a little more uncomfortable and a little more tense." Officer Rojas said she did not think Appellant "was being entirely truthful" and stated he "kept trying to put [Complainant] in a bad light." Appellant terminated the interview after Officer Rojas began reviewing specific text messages she found on Complainant's phone.

Forensic interviewer Suzanne Odhiambo also testified at Appellant's trial and discussed her interview with Complainant after Complainant disclosed the sexual abuse allegations. Odhiambo said Complainant provided details regarding the assaults and described certain sensory details that "typically would not be present with someone who had just seen pornography or something." Odhiambo

3

said Complainant was consistent throughout the interview and she deemed Complainant's disclosure to be valid.

Doctor Michelle Lyn testified regarding the sexual assault examination she performed on Complainant and stated that Complainant had bruising and some abrasions around the genital area. Dr. Lyn said the bruising and abrasions were consistent with Complainant's statement that Appellant had sexually assaulted her a few days earlier.

After the State rested its case, Appellant's trial counsel called Complainant's mother as a witness for the defense. Complainant's mother said she was with Appellant for several years but no longer dated him. Complainant's mother said she never "noticed anything inappropriate" between Appellant and Complainant.

The jury deliberated and returned a verdict finding Appellant guilty of one count of sexual assault of a child. The trial court sentenced Appellant to 60 years' confinement. Appellant timely appealed.

## ANALYSIS

Appellant asserts (1) the trial court erred by admitting into evidence State's exhibit 18, which showed text messages between Appellant and Complainant; and (2) his trial counsel committed cumulative errors that amounted to a complete failure of the adversarial process.

## I.  Any Error in the Admission of Exhibit 18 Was Harmless.

Challenging the trial court's admission of exhibit 18, Appellant argues the evidence (1) violates his Sixth Amendment right to confrontation; (2) constitutes impermissible hearsay; (3) was not properly authenticated; and (4) violates the best evidence rule.

Exhibit 18 shows text messages between a phone number associated with

4

Appellant and a phone number associated with Complainant. The exhibit contains a total of 31 pages, with each page showing several messages pictured as speech bubbles in a back-and-forth format. The pages are divided into two columns; at the top of the left column is a smiling picture of Complainant and at the top of the right column is a mug shot of Appellant. Many of the messages appear to show Appellant urging Complainant to provide sexual favors in exchange for permission to participate in certain activities, like spending time with her boyfriend.

We presume without deciding that State's exhibit 18 was erroneously admitted. Because Appellant asserts that exhibit 18 violates his right to confrontation, we review the presumed violation for constitutional harm under a harmless error analysis. *See Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007); *Pena v. State*, 554 S.W.3d 242, 254 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Pursuant to this standard, we affirm the trial court's judgment if we determine beyond a reasonable doubt that the alleged error did not contribute to Appellant's conviction. *See Clay*, 240 S.W.3d at 904; *Pena*, 554 S.W.3d at 254; *see also* Tex. R. App. P. 44.2(a). For this analysis, the critical inquiry is not whether the remaining evidence supported the verdict, but rather the likelihood that the erroneously-admitted evidence was actually a contributing factor in the jury's deliberations. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). We consider (1) the importance of the erroneously-admitted evidence to the State's case; (2) whether the erroneously-admitted evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously-admitted evidence; and (4) the overall strength of the State's case. *Clay*, 240 S.W.3d at 904; *Pena*, 554 S.W.3d at 254. "We must also consider any other factor, as revealed by the record, that may shed light on the probable impact of the trial court's error in the minds of average jurors." *Clay*, 240 S.W.3d at 904.

We review Appellant's evidentiary challenges to exhibit 18's admission for non-constitutional error. *See Austin v. State*, 222 S.W.3d 801, 812 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Generally, non-constitutional error that does not affect an appellant's substantial rights must be disregarded. *McMinn v. State*, 558 S.W.3d 262, 270 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also* Tex. R. App. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 541 S.W.3d 306, 313 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Conversely, an error does not affect a substantial right if we have fair assurance that the error did not influence the jury or only had a slight effect. *Id*.

With respect to the constitutional harm analysis, we are persuaded beyond a reasonable doubt that the jury's verdict would have been the same even if the trial court had not admitted State's exhibit 18. First, exhibit 18 was cumulative of other evidence presented at trial. Officer Rojas testified that she collected Complainant's phone and saw "text messages going from [Complainant's] phone number to [Appellant's] phone number that seemed to be a little suspicious." Describing the messages' content, Officer Rojas said they "seemed to suggest sexual activities and then a lot of them also went along with what [Complainant's] original story was." Officer Rojas testified that many of the text messages were sent in the early-morning hours, when Appellant was working as a taxi cab driver.

Officer Rojas also discussed her September 2014 interview with Appellant, during which she asked him about the suspicious text messages she saw on Complainant's phone. Officer Rojas said Appellant initially was "pretty calm" but, when she asked him about the text messages, he became "a little more uncomfortable and a little more tense." Officer Rojas showed Appellant some of the text messages and Appellant verified his phone number at the time of the text

messages. Officer Rojas also asked Appellant about the phone he used during the time period in question; Appellant told her "the phone he had been using had fallen into the water" and "was gone." Appellant also told Officer Rojas that "somebody else could have been using [his] phone." Officer Rojas said Appellant terminated the interview after they began reviewing specific text messages.

Complainant also testified with respect to the text messages she exchanged with Appellant and verified her phone number at the time of the messages as well as the number used by Appellant. Complainant said the first sexual assault was initiated when Appellant texted her and told her "to come into the room and lay down with him." While the abuse was ongoing, Complainant said Appellant would text her telling her that she "owe[d] him" if she "asked him to go hangout with friends after school or go hangout with the guy [she] was talking to." Complainant said she and Appellant would "text back and forth about . . . calling a bargain where he would demand sex for something that [she] wanted[.]"

Exhibit 18's portrayal of Appellant's and Complainant's relationship also was corroborated by other evidence. Officer Rojas testified about the meeting she had with Complainant after Complainant disclosed the sexual assault allegations; Officer Rojas discussed the content of Complainant's allegations as well as a calendar that Complainant had filled in to show the dates of the assaults. Officer Rojas said Complainant was consistent throughout the interview and nothing about Complainant's demeanor made her question Complainant's credibility.

Odhiambo testified about Complainant's forensic interview. Odhiambo said Complainant "disclose[d] sensory details" about the assaults that "would not be present with someone who had just seen pornography or something." Odhiambo said Complainant was consistent with the details she provided throughout the interview and she concluded Complainant's disclosure was "valid."

7

Dr. Lyn testified about the sexual assault examination she performed on Complainant in May 2014. Dr. Lyn stated she found "bruising and some abrasions" in Complainant's genital area, which was consistent with Complainant's statement that Appellant had sexually assaulted her a few days earlier.

Finally, Complainant also testified at length about the alleged sexual assaults. Complainant said Appellant had repeatedly coerced her to engage in oral and vaginal sex. Complainant said the sexual assaults went on for several years, occurring once or twice a week.

A review of the evidence shows that, even with the exclusion of exhibit 18, the State's overall case against Appellant was strong. Moreover, because exhibit 18 was cumulative of and corroborated by other evidence, it was not critical to the State's presentation of its case. We therefore determine beyond a reasonable doubt that the alleged erroneous admission of exhibit 18 did not contribute to Appellant's conviction. *See* Tex. R. App. P. 44.2(a); *Clay*, 240 S.W.3d at 904; *Pena*, 554 S.W.3d at 254. We also conclude exhibit 18 did not give rise to non-constitutional error and did not have a substantial and injurious effect or influence on jury's verdict. *See Gonzalez*, 541 S.W.3d at 313.

We overrule Appellant's challenges to the trial court's admission of State's exhibit 18.

II.      **Trial Counsel's Actions Do Not Constitute Ineffective Assistance.**

Citing *U.S. v. Cronic*, 466 U.S. 648 (1984), Appellant argues his trial counsel committed cumulative errors during the underlying proceeding that "amounted to a complete failure of the adversarial process." Specifically, Appellant asserts trial counsel (1) ineffectively cross-examined Complainant; (2) elicited testimony from Complainant regarding "highly prejudicial extraneous

8

allegations, such as the 'naked spanking' incident;" (3) failed to question Complainant's mother about Complainant's prior inconsistent statements; (4) made an "affirmatively prejudicial closing argument;" and (5) failed to timely file a punishment election.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his trial counsel's performance was deficient, and (2) he was prejudiced by this deficiency. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Altering *Strickland*'s two-prong test, *Cronic* permits a presumption of prejudice if the defendant shows "that defense counsel 'entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing,' so that there was a constructive denial of the assistance of counsel altogether." *See Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (quoting *Cronic*, 466 U.S. at 659). Under *Cronic*, trial counsel's failure to test the State's case must be "complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

We reject Appellant's contention that trial counsel committed cumulative errors that amounted to a complete failure of the adversarial process under *Cronic*. The record in this case demonstrates that trial counsel was prepared for and participated in all aspects of Appellant's trial. Trial counsel objected during the State's witness examinations, objected during the State's introduction of certain evidence, cross-examined the State's witnesses, presented a witness, presented a closing statement, and implemented a defensive strategy. Therefore, Appellant has not demonstrated on this record that trial counsel "entirely failed" to subject the prosecution's case to meaningful adversarial testing. *See, e.g., Rodriguez v. State*, 425 S.W.3d 655, 669 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Head v. State*, 299 S.W.3d 414, 443 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

Setting aside *Cronic*'s presumption regarding prejudice, Appellant also argues the record is sufficient to satisfy *Strickland*'s two-prong test. To establish the first prong, Appellant must prove by a preponderance of the evidence that trial counsel's representation fell below the objective standard of prevailing professional norms. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We indulge a strong presumption that trial counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To overcome this presumption, Appellant's claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. "A finding of ineffectiveness cannot be supported by second-guessing the strategy of trial counsel through hindsight or by the fact that another attorney might have pursued a different course." *Navarro v. State*, 154 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Direct appeal often is an inadequate vehicle for raising such a claim because the record generally is underdeveloped and does not adequately reflect trial counsel's motives. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

For the second *Strickland* prong, ineffective assistance of counsel prejudices a defendant if there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

We apply these precepts to Appellant's complaints regarding trial counsel's actions.

## A.     Questioning Complainant

Appellant argues trial counsel (1) asked Complainant questions that conceded Appellant's guilt; (2) asked Complainant open-ended questions regarding the assaults; and (3) "unnecessarily revisited the topic of the first alleged assault multiple times."  We reject Appellant's claim that these actions constitute ineffective assistance.

"Cross examination is an art, not a science, and it cannot be adequately judged in hindsight."  *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005).  Here, the record does not show that the complained-of actions fall below the standard of prevailing professional norms, particularly since trial counsel was not afforded an opportunity to explain the motivations or strategy behind his conduct.  *See Rylander*, 101 S.W.3d at 110-11.

First, trial counsel's questions did not concede Appellant's guilt but rather repeated the sequence of events described by Complainant during her direct examination.[1]  By merely restating the Complainant's testimony, this questioning does not support the conclusion that trial counsel conceded Appellant's guilt.  *See, e.g., Cueva v. State*, 339 S.W.3d 839, 865-66 (Tex. App.—Corpus Christi 2011, pet. ref'd).

Second, Appellant summarily asserts that trial counsel asked Complainant "open ended questions."  But Appellant does not suggest or cite any authority to

---

[1] For example, Appellant complains of the following questions in which trial counsel directly referenced Complainant's prior testimony: (1) "Let's go back to the first time the first sex act began.  You're in bed with [Appellant] and your mother and *your testimony is that* she's asleep correct?" and (2) "Let's turn back to the April 24, 2014, April 29, 2014.  It was *your testimony that* was the last time [Appellant] violated you?"

support an alternative questioning format and does not explain how the "open ended questions" prejudiced his case.

Finally, Appellant argues trial counsel "unnecessarily revisited the topic of the first alleged assault multiple times which allowed the Complainant to elaborate and testify to additional details that had not been discussed during direct examination." Lacking a record that reflects trial counsel's motivations for this strategy, we cannot conclude the complained-of questioning evidences ineffective assistance. By continuing to question Complainant about the first incident, trial counsel may have been attempting to elicit inconsistencies or other weaknesses in Complainant's description of events. Appellant's challenge does not overcome the presumption that these actions fell within the wide range of reasonable professional behavior.

### B. Eliciting Testimony Regarding Extraneous Acts

Appellant argues trial counsel erroneously elicited testimony regarding the "naked spanking" incident, during which Appellant "would have [Complainant] undress when he whipped [her]." Appellant asserts "[t]here was no reasonable trial strategy to elicit such harmful testimony . . . particularly where the State had not introduced any evidence of them."

But contrary to Appellant's claim, the State also elicited testimony during Complainant's direct examination regarding the "naked spanking" incident. While questioning Complainant about how Appellant would punish her and her brothers, Complainant said "when [she] got punished it was belt no clothes[,]" but when "it was [her] brothers it was belt clothes on." Appellant did not object to this line of questioning. By revisiting the "naked spanking" incident during Complainant's cross examination, trial counsel may have been trying to mitigate the testimony's harmful effects or otherwise lessen its impact on the jury. This challenge does not

12

overcome the presumption that trial counsel's questioning fell within the wide range of reasonable professional behavior.

## C. Questioning Complainant's Mother

Pointing out that trial counsel did not interview Complainant's mother before trial, Appellant argues trial counsel "failed to ask any questions as to Complainant's prior inconsistent statements."

The record does not show what testimony trial counsel could have elicited from Complainant's mother. Without this showing, Appellant cannot prove that trial counsel's failure to elicit certain testimony prejudiced his case. *See Thompson*, 9 S.W.3d at 814 (an ineffective assistance claim "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness").

Appellant cites *Ex parte Saenz*, 491 S.W.3d 819 (Tex. Crim. App. 2016), but this case is distinguishable. The *Saenz* defendant asserted his attorney failed to elicit testimony from an eyewitness regarding the eyewitness's prior inconsistent statement. *Id*. at 826-27. But the record in *Saenz* firmly supported the defendant's ineffective assistance claim — the *Saenz* defendant raised the issue in the trial court and deposed his attorney, during which his attorney acknowledged the failure to impeach the eyewitness was a mistake. *Id*. at 827. Conversely here, the record in Appellant's proceeding was not developed with respect to trial counsel's strategy and the evidence he could have elicited to aid Appellant's case. Accordingly, the record does not support Appellant's ineffective assistance claim stemming from trial counsel's examination of Complainant's mother.

## D. Closing Argument

Arguing that his trial counsel "made an affirmatively prejudicial closing

argument," Appellant points to the following statements:

> The evidence will show that [Complainant] says [Appellant] wasn't erect. No he wasn't erect. Anybody that's — look at the evidence. Rape is a crime of violence. The weapon is the penis or whatever it's going to be. There was no excitement there. The excitement comes from the prospect of tainting, of hurting, of diminishing somebody. That's a gratifying concept and there is no trouble being erect. There are people clinically castrated that are able to go back and commit rape because it has nothing to do with testosterone. It's a cognitive but never erect.

An ineffective assistance claim cannot be based on a difference of opinion with respect to trial strategy. *Thompson*, 9 S.W.3d at 813. Closing arguments, in particular, involve inherently strategic decisions that must be tailored to the strategy of the defense based on events that occurred during trial. *See Ex parte Scott*, 541 S.W.3d 104, 119 (Tex. Crim. App. 2017). "Accordingly, deference to counsel's strategic decisions during closing arguments is particularly important because of the wealth of legitimate strategies that can be employed, and those decisions will be second-guessed only if there is no plausible basis for the attorney's actions." *Id*.

Despite the excerpted portion quoted above, trial counsel's closing argument, considered as a whole, tended to advance Appellant's interests and emphasized (1) the burden of proof; (2) evidence that could cast doubt on Complainant's testimony; and (3) Appellant's role taking care of the family. Though unconventional, the statements above — without more — do not show that trial counsel's performance fell below the range of reasonable professional judgment. *See, e.g., Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet ref'd).

14

### E.     Punishment Election

In his last challenge, Appellant argues trial counsel was ineffective for failing to file a punishment election prior to voir dire and permitting the trial court to assess punishment.

Appellant asserts his ineffective assistance claim challenging counsel's actions in the punishment phase of trial is governed by *Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980).  But like the challenges addressed above, ineffective assistance claims arising from the punishment phase also are governed by *Strickland*'s two-prong test.  *See Hernandez v. State*, 988 S.W.2d 770, 771-74 (Tex. Crim. App. 1999); *see, e.g., Rodriguez v. State*, 329 S.W.3d 74, 81-84 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (applying *Strickland* to alleged errors that arose during guilt-innocence and punishment phases of the defendant's trial).

In noncapital criminal cases, the trial court assesses the defendant's punishment unless the defendant elects the jury to assess punishment.  Tex. Code Crim. Proc. Ann. art. 37.07 § 2(b) (Vernon Supp. 2018).  Here, the record does not support the conclusion that trial counsel's alleged failure to file a punishment election constitutes ineffective assistance.  Discussing the failure to file a punishment election, the trial court stated:

> [Appellant's trial counsel] alerted the Court this morning [of] the fact that formal election has not been filed and while we had discussed the jury assessing punishment the Code is clear that the election not being filed punishment goes to the Court, which [trial counsel] has said he would prefer anyway.

This exchange indicates that trial counsel understood Appellant's preference was for the trial court to assess punishment.  The record therefore does not support the conclusion that trial counsel erred by failing to file a punishment election.

We reject Appellant's ineffective assistance claims.

**CONCLUSION**

We overrule Appellant's issues on appeal and affirm the trial court's judgment.


/s/     Meagan Hassan
        Justice


Panel consists of Justices Christopher, Hassan, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).