

# NUMBER 13-22-00524-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MATTHEW ANDREW ALLRED,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

## ON APPEAL FROM THE 443RD DISTRICT COURT
## OF ELLIS COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Contreras and Justices Longoria and Peña
Memorandum Opinion by Justice Longoria**

Appellant Matthew Andrew Allred was found guilty by a jury of two counts of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. After finding an enhancement paragraph true, the jury sentenced Allred to life imprisonment on both charges, and the sentences were ordered to run concurrently. By

three issues, Allred argues that the trial court abused its discretion when it (1) denied his motion to suppress the testimony of an extraneous offense witness, (2) denied his request for mistrial after the State made improper comments in its opening statement, and (3) denied his request for mistrial after a non-outcry witness testified regarding sexual abuse suffered by the complainant. We affirm.

## I.  BACKGROUND[1]

Allred was indicted on two counts of aggravated sexual assault of M.M., the minor daughter of his girlfriend, S.G.[2]  *See id.* § 22.021. In addition, the indictment alleged that Allred had a previous conviction for indecency with a child rendered on December 11, 2007. *See id.* § 21.11. Allred's case proceeded to jury trial.

At trial, V.B. testified that she was M.M.'s paternal aunt and adoptive mother. V.B. testified that Child Protective Services (CPS) had placed M.M. in her care in April 2020. According to V.B., M.M. began outcrying about incidents of sexual abuse around May 2020.

M.M., who was ten years old at the time of her testimony, testified that Allred sexually abused her at Allred's mother's home in Ellis County when she was seven years old. M.M. described two events that occurred in early 2020, "before COVID." Regarding the first incident, M.M. testified that Allred touched the inside of her vagina with his finger. M.M. also noted that during this incident, Allred scratched the inside of her vagina, which

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] We refer to minor victims and their family members by initials to protect their identity.

caused her pain. Regarding the second incident, M.M. testified that Allred put "his vagina inside her vagina." M.M. stated that a boy uses his "vagina" to go to the bathroom; that it looks different than a girl's "vagina"; that it looks like a sausage or hotdog; and that Allred's "vagina" was hairy, medium length, and matched his skin color. M.M. also testified about a third incident at Allred's mother's home where Allred grabbed M.M.'s hand and made her touch his "vagina." M.M. noted that during this incident, her index finger touched the tip of Allred's "vagina," "where the pee comes out."

The State also presented the testimony of Bibianna Gutierrez and Dr. Elizabeth Peeler. Gutierrez, a forensic interviewer with the Dallas Children's Advocacy Center (CAC), was the State's designated outcry witness, and testified regarding, among other things, statements that M.M. made during an interview on June 26, 2020. Dr. Peeler, a child abuse pediatrician, testified that she conducted a medical examination of M.M. on July 3, 2020, and indicated that M.M.'s genitals and anus were normal. Dr. Peeler explained she expected this result because "it had been several months since . . . any alleged abuse had occurred. If she were to have an injury, by the time I saw her, it would have healed."

The State also presented evidence that Allred had sexually assaulted A.H., another child, who was twenty-nine years old at the time of her testimony. She testified that in 2002, when she was ten years old, Allred rubbed and massaged her vagina over her panties with his hand.[3] A.H. stated that Allred put his other hand over her mouth so she would not scream, and remarked, "You're not going to tell on me, are you?" A.H. also

_____

[3] Testimony at trial established that Allred was born on September 5, 1985.

3

testified that Allred would French kiss her on many occasions at his mother's home.

After presentation of all the evidence and closing arguments by the parties, the jury found Allred guilty of both counts of aggravated sexual assault of M.M. The jury also found the enhancement paragraph of the indictment true and assessed punishment at life imprisonment for both counts. This appeal followed.

## II. SUPPRESSION

Prior to trial, Allred filed a "Motion to Suppress Illegally Withheld Discovery Pursuant to [Texas Code of Criminal Procedure Article] 39.14." In his first issue, Allred claims that the trial court erred when it denied the motion.

### A. Standard of Review & Applicable Law

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.* at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id.* But we review de novo the legal significance of the facts found by the trial court. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

We must view the evidence in the light most favorable to the trial court's decision on the motion. *State v. Garcia*, 569 S.W.3d 142, 152–53 (Tex. Crim. App. 2018). When, as here, the trial court does not make explicit findings of fact and none are requested by the losing party, "we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings

4

are supported by the record." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)).

We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

Article 39.14(a) of the code of criminal procedure (the Michael Morton Act) requires the State, "as soon as practicable upon receiving a timely request," to produce and permit the inspection and electronic duplication of "material" evidence by the defense. TEX. CODE CRIM. PROC. ANN. art. 39.14(a); *see Watkins v. State*, 619 S.W.3d at 290 (Tex. Crim. App. 2021) (defining "material" under Article 39.14 as "having a logical connection to a consequential fact" and "synonymous with 'relevant'"). The State has an additional, affirmative duty to disclose "exculpatory, impeachment, or mitigating" materials that "tend[] to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ANN. art. 39.14(h). Courts have held that, when the State willfully violates Article 39.14 or acts in bad faith, the trial court may exclude the evidence at issue as "a court-fashioned sanction for prosecutorial misconduct." *See In re State*, 605 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2020, orig. proceeding); *see also Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014).

## B.    Discussion

The record indicates that on February 8, 2021, Allred's counsel faxed its discovery request pursuant to Article 39.14 to the Ellis County District Attorney's Office.

5

On March 18, 2022, the State filed its notice of intent to introduce extraneous offense testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (providing that the State must provide notice of its intent to present such testimony no later than the thirtieth day before the date of the defendant's trial). The State later filed additional notices pursuant to Article 38.37 on July 15, 2022, August 25, 2022, and September 14, 2022. Each of these notices indicated, among other things, that the State intended to introduce evidence that Allred had been previously convicted on December 11, 2007, of committing the offense of indecency with a child by sexual contact against ten-year-old A.H.[4] on or about December 4, 2002.

On September 13, 2022, the jury was sworn, selected, and empaneled. The guilt-innocence phase of trial was scheduled to begin on Monday, September 26, 2022. On Friday, September 23, 2022, the State emailed Allred's counsel informing him that a video recording of a forensic interview of A.H. was available for review if Allred's counsel wished to see it. On the same day, Allred filed a motion to suppress, asserting that "any evidence released by the State to Defense Counsel on or after September 13, 2022, was illegally withheld from disclosure in violation of the statutory rights of . . . Allred pursuant to Art. 39.14." Specifically, Allred requested suppression of "[a]ny and all evidence in this cause released by the Ellis County District Attorney's Office after September 13, 2022 and any testimony by any State's witness concerning such evidence to include but not limited to evidence pertaining to" "CPS INTAKE REPORT PRIOR VICTIM [A.H.]," "CAC DRAWINGS & DOCUMENTS," and "[a]ny and all information, evidence, or testimony that

---

[4] The notices specifically referenced A.H. as Allred's foster sister.

6

gives rise to, or results, from any information or discovery mentioned in notification contained in an email from the State to Defense counsel dated 9/23/22 at 10:30AM." Allred's counsel attached the State's email to his motion.

Prior to the beginning of the State's case-in-chief on September 26, 2022, the trial court took up several matters, including the admissibility of A.H.'s testimony pursuant to Article 38.37 and Allred's suppression motion. *See id.* at 38.37 (providing that evidence of a separate sexual offense committed by the defendant may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant," but only if the court determines after a hearing that the evidence "will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt"). At the hearing, Allred's counsel requested that "any discovery released after . . . the jury was sworn and impaneled, and the information that stems from that," be excluded from trial "because the defense . . . had no chance to prepare for it." The trial court then asked Allred's counsel whether he wanted a continuance, and counsel replied "the defense is not asking for a continuance." The trial court informed the parties that certain items were not admissible, which are not at issue in this cause, when the following exchange occurred:

| [Allred's counsel]: | And, Your Honor, if I may, what about the SANE reports that were released to the defense last minute as well as information gleaned from the CAC interview of a separate victim? |
|---|---|
| [The Court]: | Response to that? |
| [The State]: | The SANE records, we mentioned they're related to the Carrollton incident. That's not admissible, as |

7

|  | Your Honor has already ruled on, so how can we get into the SANE if it's not admissible. |
| | |
| | And then the CAC interview that he's mentioning, I have an extraneous witness that's going to testify— a 38.37 witness who's going to testify, and I received her CAC interview on a VHS on Friday, and I e-mailed them about it. I can't offer CAC interviews. |
| [The Court]: | Right. That's hearsay. |
| [Allred's counsel]: | And we had notice of the CAC interview Friday, Your Honor. We've had no chance to prepare. I don't know what this witness is going to say. |
| [The Court]: | Right. Is that witness here now? |
| [The State]: | She is. |
| [The Court]: | Okay. We're going to hear from her now. I'm going to hold the motion to suppress in abeyance until after I've seen what these witnesses have to say, okay? So I'll not decide now. |

After addressing other matters, the trial court heard testimony from A.H. for purposes of determining its admissibility pursuant to Article 38.37. *See id.* at 38.37. A.H. testified about the events noted above, but also indicated that Allred pled guilty to the offense of indecency with a child against her. Allred's counsel argued, among other things, that he had not been provided "any judgment to show guilt or innocence in this case" and objected "to any testimony about this based on the fact the State hasn't followed the Michael Morton Act." The State responded that it had provided Allred's counsel the judgment "in discovery."

After the parties made various other arguments and responses, Allred's counsel reiterated that "we haven't even seen the [CAC] video" and that "we just received the

judgment right now, and trial has already started." Allred's counsel then requested that the trial court "suppress [A.H.'s] testimony based on the information that we just got late. And [the *Heath* case] was very clear that the State has an affirmative duty to investigate before trial." *See State v. Heath*, 642 S.W.3d 591 (Tex. App.—Waco 2022, pet. granted) *aff'd*, ___ S.W.3d ___ (Tex. Crim. App. 2024). The trial court ruled that it was going to allow A.H.'s testimony under Article 38.37 because it was more probative than prejudicial, but forbade the State from eliciting any testimony regarding the fact that Allred had been convicted or pled guilty because "it's more prejudicial than probative . . . not because of the discovery issue." *See id.* Allred renewed his objection before A.H. testified in front of the jury. Neither A.H.'s video-recorded interview nor Allred's 2002 judgment related to his criminal offense against A.H. was ever offered or admitted into evidence.

In his brief, Allred argues that A.H.'s entire testimony should have been suppressed because her recorded video statement at the CAC was not timely produced by the State and he did not have ample opportunity to review it and prepare for cross-examination prior to trial. Allred further points out that, pursuant to statute, such video statements may only be viewed at a district attorney's office. *See* TEX. CODE CRIM. PROC. ANN. art. 39.15.

In *State v. Heath*, the Waco Court of Appeals affirmed a trial court's ruling suppressing a 9-1-1 recording related to the alleged offense because that evidence was not produced "as soon as practicable" as required by Article 39.14. 642 S.W.3d at 597–98 (applying TEX. CODE CRIM. PROC. ANN. art. 39.14). In that case, the prosecutor had produced the 9-1-1 recording to the defense on the same day it was received, six days before trial. *Id.* at 594. Heath filed a motion to suppress the recording. *Id.* At a hearing on

9

the motion,

> counsel for Heath argued that the prosecutor's failure to ascertain the existence of the recording until the fourth trial setting was not due to bad faith on the part of the prosecutor but the prosecutor was under a duty to ascertain the existence of the recording and her failure to do so resulted in the recording's production not being made "as soon as practicable." Heath argued that because the recording was in the possession of "the State" since its creation, regardless of the bad faith or willful intent of the prosecutor, the recording should be excluded.

*Id.* at 595. The trial court granted Heath's suppression motion. *Id.* On appeal, the State argued that the prosecutor's failure to produce the recording was not a willful violation of Article 39.14(a), and therefore, exclusion was not the proper remedy. *See In re State*, 605 S.W.3d at 726. The Waco Court of Appeals held the following:

> The question thus to be answered in this proceeding is whether the old concept of "willful violations" and "bad faith" still apply in the same way with the Legislature's use of the phrase "as soon as practicable" which arguably infused an element of timeliness into the timing of the discovery response regardless of willful misconduct. We find that they do not. In this context, in its amendments to article 39.14(a), the Legislature made a substantive change to the process for the disclosure of requested items. Previously, if the trial court ordered the State to provide discovery, the terms of the order would control as to what was to be produced, as well as how and when. As amended, responsive discovery is now to be provided "as soon as practicable," which has a connotation of a duty of the prosecutor to timely search out discovery that may be in the State's custody, constructive possession, or control and then to provide it to the defendant in a timely manner in response to a discovery request. It is no longer sufficient for the State to wait until it gets ready, or when the prosecutor decides to prepare the case for trial, to then search out and produce properly requested discovery. Rather, once discovery of an item is requested, the State now has an affirmative duty to search for the item and produce it to the defendant in a timely manner. While there is no hard and fast time period like the 30-day due date in civil cases set forth in the rules of civil procedure, and there should not be because the legislature did not set one, a failure to at least inquire about the existence of discoverable items in response to a proper request in a timely manner is all the evidence necessary to show that the failure to timely produce the item in discovery was due to what was previously characterized as a "willful violation" or "bad faith". The prosecutor need not know what it is that is not being produced, but the failure to even

look to see if there is something responsive to the request in light of the duty to search out responsive discovery is adequate for the trial court to fashion a remedy appropriate to the situation. The trial court has great discretion in determining the appropriate remedy depending on the circumstances of each case.

In a situation where the prosecutor was set for trial and presumably ready to proceed to trial without the evidence on three prior settings, the ruling by the trial court excluding the evidence that was not previously produced, in this instance the recording of the 9-1-1 call, is not an abuse of discretion. The trial court fashioned an appropriate sanction for the State's failure to timely produce the recording in response to the discovery request. We thus find that the trial court's decision, based on the information it had before it at the time of its ruling, did not constitute an abuse of discretion because the evidence was not produced "as soon as practicable."

*Heath*, 642 S.W.3d at 597–98.[5] In this case, the State does not dispute Allred's assertion that its late disclosure of A.H.'s video-recorded interview was in violation of Article 39.14. However, unlike the 9-1-1 recording in *Heath*, the video-recording here was never offered or admitted as evidence at Allred's trial. Allred's complaint below and on appeal is not about the exclusion of the video recording itself. Instead, Allred argues that the trial court should have excluded A.H.'s *entire* testimony as a remedy for the State's tardy disclosure of the video recording.[6]

---

[5] The Texas Court of Criminal Appeals recently affirmed *Heath* on June 12, 2024, but held the following:

. . . [W]e agree with the [Waco Court of Appeal's] holding that the trial court did not abuse its discretion but we disagree that the failure to inquire about the existence of discoverable evidence rises to the level of "bad faith" on the part of the prosecutor. Instead, we hold that the trial court had the inherent authority to fashion a remedy to control its docket and was not required to find the State acted in bad faith in order to exclude the evidence for a violation of Article 39.14.

*Heath*, ___ S.W.3d at ___.

[6] While the trial court has great discretion in determining the appropriate remedy for violations of Article 39.14 depending on the circumstances of each case, Allred has provided no case authority supporting the expansive remedy he sought below, and we have found none. *See State v. Heath*, 642 S.W.3d 591, 597 (Tex. App.—Waco, 2022, pet. granted) *aff'd*, ___ S.W.3d ___ (Tex. Crim. App. 2024).

11

The State argues that Allred failed to preserve his issue because he did not request a continuance. We agree. The record reflects that Allred affirmatively informed the trial court that he was not requesting a continuance. In other words, Allred had the opportunity to avoid any prejudice or impairment resulting from the State's late disclosure of the video recording, but chose not to. Therefore, we hold that Allred has waived his Article 39.14(a) complaint. *See Rodriguez v. State*, 630 S.W.3d 522, 524–25 (Tex. App.—Waco 2021, no pet.) (holding that the appellant waived his Article 39.14 complaint regarding a late-disclosed arrest warrant by failing to request a continuance); *Ray v. State*, No. 10-17-00394-CR, 2018 WL 4926215, *6 (Tex. App.—Waco Oct. 10, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that the appellant waived any violation of Article 39.14(h) by failing to request a continuance); *see also Lindsey v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.").[7] We overrule Allred's first issue.

## III. MISTRIAL

In his second issue, Allred raises a complaint regarding the trial court's refusal to issue an instruction to disregard a comment the State made during its opening statements to the jury. As explained below, we construe Allred's second issue as an argument that the trial court erred by denying his request for mistrial. In his third issue, Allred argues

---

[7] We note that in *Heath*, the State also argued that Heath had failed to preserve his Article 39.14 complaint by failing to request a continuance. *Id.* at 598. However, the *Heath* Court found that "since the trial court granted Heath's motion and excluded the evidence, we find that a motion for continuance was not necessary in this circumstance." The instant case is distinguishable from *Heath* because the party seeking exclusion, unlike the appellee in *Heath*, was not granted that specific relief for the State's violation of Article 39.14.

12

that the trial court abused its discretion when it failed to grant his request for mistrial after a non-outcry witness testified regarding sexual abuse suffered by M.M. We address these issues together.

## A.    Standard of Review & Applicable Law

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and will uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884. A mistrial is an extreme remedy reserved for a narrow class of cases in which the error is highly prejudicial and incurable. *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."). The grant of a mistrial is proper "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

The appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a tailored version of the test originally set out in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998), a harm analysis case. *Perez v. State*, 187 S.W.3d 110, 112 (Tex. App.—Waco 2006, no pet.) (cleaned up). The *Mosley* factors that we consider in determining whether the trial court abused its discretion in denying a mistrial are: (1) the severity of the misconduct (the magnitude of the prejudicial effect); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct. *Id.*

13

(citing *Mosley,* 983 S.W.2d at 259).

## B. Discussion

### 1. Improper Opening Statement

During the State's opening statements to the jury, the prosecutor stated, among other things, that "[t]he evidence is going to show that he committed multiple acts of sex abuse against [M.M.] when she was seven at his mother's house in Midlothian, Texas." The prosecutor also stated:

> You will hear from experts, and you'll recall back to voir dire, that although you probably don't need either because your common sense will tell you that it is not up to the victim. She's not the one who calls the shots. It's Matthew Allred who decides when and where, what happens. It's Matthew Allred who decides which child to prey on. And you will learn that he groomed and put the fear into that little girl, not only her, but to her—

Allred then lodged an objection for improper argument, which was sustained by the trial court. Allred next requested "that the jury disregard that last statement," but the trial court declined to so instruct the jury. Allred then moved for a mistrial, which was also denied by the trial court.

In his brief, Allred characterizes his second issue as a complaint regarding the trial court's refusal to issue an instruction to disregard. Within this issue, Allred argues that the prosecutor's statements were harmful and treats the trial court's denial of an instruction to disregard as a *Mosley* factor. However, as noted above, the trial court sustained Allred's objection that the prosecutor's comments were improper, but denied his request for mistrial on the same basis. Accordingly, we construe Allred's issue as an argument that the trial court erred by denying his request for mistrial.[8]

---

[8] The State argues that the prosecutor's complained-of remarks did not constitute improper jury argument. However, the trial court sustained Allred's improper jury argument objection, and that specific

14

A prosecutor's opening statement is authorized by article 36.01. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3). The opening statement should inform the jury of the nature of the accusation and the facts which are expected to be proved by the State. *Id.*; *see Taylor v. State*, 947 S.W.2d 698, 706 (Tex. App.—Fort Worth 1997, pet. ref'd). However, an opening statement in which a party engages in jury argument, rather than stating to the jury the nature of the issues and the evidence that the party expects to be produced, is improper. *See Hullaby v. State*, 911 S.W.2d 921, 927 (Tex. App.—Fort Worth 1995, pet. ref'd).

First, the severity of the State's misconduct and the magnitude of its prejudicial impact were not great. "Because opening statements should be limited to facts expected to be proved, slightly argumentative comments are generally deemed improper primarily due to their occurrence in the opening statement rather than due to their content." *Rodriguez v. State*, 678 S.W.3d 375, 383 (Tex. App.—Dallas, 2023 pet. ref'd). Here, the complained-of remarks were not particularly egregious or prejudicial given that Allred was on trial for aggravated sexual assault of a child, and the State expected to show evidence of Allred's sexual abuse of his girlfriend's daughter and expert evidence regarding grooming and victim selection. We find the first *Mosley* factor weighs against a grant of mistrial.

Second, the trial court sustained Allred's objection but did not issue any curative instructions. A prompt instruction to disregard will ordinarily cure error associated with improper testimony. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). We

_____

ruling is not at issue in this appeal.

15

note that the State elicited testimony from M.M. that Allred had hit her once, that it hurt, and that she was afraid of getting hit. When asked whether Allred hit her again, M.M. responded, "Not if I didn't . . . do whatever he told me to do" and that she was scared he would hurt her if she said no. The State also presented expert testimony from Kineta Holsworth, a licensed professional counselor, about what grooming is and how it is utilized to "engage [a] child in sexual activity and sexual interaction." Thus, the State partially cured any prejudicial effect of the complained-of remarks by introducing M.M. and Holsworth's testimony, which tended to vindicate the statements in part. *See Banks v. State*, 643 S.W.2d 129, 133 (Tex. Crim. App. 1982) ("The opening remarks about evidence which was thereafter properly admitted did not constitute error."). We find the second *Mosley* factor only slightly favors a grant of mistrial.

Third, the strength of the evidence supporting the conviction weighs against a grant of mistrial. The State presented M.M., who directly testified about the numerous acts of sexual abuse she had endured by Allred. We note that M.M.'s testimony described the details of the manner in which she was sexually abused, including the location and time of their occurrence. The State also presented Gutierrez, who testified about the statements M.M. made during her forensic interview at the CAC, which mirrored much of M.M.'s direct testimony. To the extent that M.M.'s testimony regarding Allred's acts of sexual abuse differed from the statements she provided to Gutierrez, such discrepancies could have been resolved by the jury's credibility assessments. *See Mills v. State*, 440 S.W.3d 69, 72 (Tex. App.—Waco 2012, pet. ref'd) (noting that the jury, as "factfinder[,] is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties") (citing *Chambers v. State*, 805 S.W.2d 459,

16

461 (Tex. Crim. App. 1991)).

Although the State should not have engaged in jury argument during its opening statement, considering the three factors discussed above as to the complained-of remarks, we conclude that the trial court did not abuse its discretion in denying Allred's motion for mistrial based on the prosecutor's statements. *See Hawkins*, 135 S.W.3d at 85 (concluding, after balancing three factors, that trial court did not abuse its discretion when it denied defendant's motion for mistrial); *Mosley*, 983 S.W.2d at 259; *Perez*, 187 S.W.3d at 112. Allred's second issue is overruled.

### 2. Non-Outcry Witness Testimony

During the guilt-innocence phase of Allred's trial, the State presented testimony from V.B. The following exchange occurred:

| | |
|---|---|
| [The State]: | Okay. When did you make the decision to adopt M.M.? |
| [V.B.]: | I don't know how to answer that without saying the wrong thing. When I knew she needed protection. |
| [The State]: | And what month was that around? |
| [V.B.]: | I'm—um, June. |
| [The State]: | Of 2020? |
| [V.B.]: | Sometime in June of 2020, yeah. |
| [The State]: | What things did you take into consideration when you were thinking about adopting her? |
| [V.B.]: | Lack of structure, discipline, abandonment. |
| [The State]: | But, I mean, what—what things did your family consider when they were— |
| [Allred's counsel]: | Objection. Relies on hearsay and speculation of |

17

| | |
|---|---|
| | what other family members would consider. |
| [The Court]: | Overruled. I'll allow it. |
| [The State]: | What things did you think about? |
| [V.B.]: | She was being sexually abused every time she was— |
| [Allred's counsel]: | Objection. Objection, Your Honor. This is— |
| [The State]: | No, that's not what I'm asking. |
| [Allred's counsel]: | This is not an outcry witness. And we are asking for a mistrial. |
| [The Court]: | The objection is sustained. I'm not granting a mistrial now, but if this happens again, I may very well contemplate it. |
| [Allred's counsel]: | Your Honor, we ask the jury to disregard. |
| [The Court]: | The jury will disregard that. |

Regarding the prejudicial effect of V.B.'s statement, Allred argues that "the jury was left with the impression that M.M. was sexually abused every time she went to Allred's house." As to the first *Mosley* factor, we conclude that any prejudice was minimal because the challenged testimony was brief and may have been mitigated by the fact that similar testimony was introduced by M.M., who provided a much more detailed account of the acts of sexual abuse she endured by Allred. *See Rogers v. State*, 200 S.W.3d 233, 238 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (concluding any error in denial of mistrial was harmless because same information was introduced without objection later during trial); *Harris v. State*, 164 S.W.3d 775, 783 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (stating that inadmissible evidence can be rendered harmless if other evidence is admitted without objection and it proves the same fact that inadmissible evidence

18

sought to prove). This factor weighs against a grant of mistrial.

Regarding the curative measures taken, the trial court sustained Allred's objection and then promptly instructed the jury to disregard V.B.'s statement upon Allred's request. As previously stated, a prompt instruction to disregard will usually cure any prejudice resulting from improper testimony. *See Ovalle*, 13 S.W.3d at 783. Appellate courts generally presume that a jury follows a trial court's instruction to disregard the improper testimony. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). This presumption is refutable, but the appellant must rebut the presumption by pointing to evidence in the record indicating that the jury failed to follow the trial court's instructions. *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Allred has not pointed to anything in the record suggesting that the jury failed to follow the trial court's instruction to disregard, and we have found none. Because Allred has not rebutted the presumption that the jury followed the trial court's instruction, we must presume that the jury followed it. *Thrift*, 176 S.W.3d at 224; *Pena*, 554 S.W.3d at 251 (concluding appellant had not rebutted presumption because he did not point out evidence in record demonstrating that the jury did not follow trial court's instruction). This factor also weighs against a grant of mistrial.

Finally, regarding the certainty of Allred's conviction absent the prejudicial event, we note that the uncorroborated testimony of a child sexual assault victim alone is legally sufficient evidence to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Green v. State*, 607 S.W.3d 147, 153 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Here, M.M. provided detailed testimony about the incidents of sexual abuse Allred committed against her. There is nothing in the record to suggest that the jury would not

19

have reached the same verdict without V.B.'s stricken testimony. This factor also weighs against a grant of mistrial.

After considering all three *Mosley* factors, we hold that the trial court did not abuse its discretion when it denied Allred's motion for mistrial regarding V.B.'s testimony. *See Hawkins*, 135 S.W.3d at 85; *Mosley*, 983 S.W.2d at 259; *Perez*, 187 S.W.3d at 112. We overrule Allred's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
5th day of July, 2024.