

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-06-377-CR**

MARVIN OWENS DANCER                                     APPELLANT
A/K/A MARVIN DANCER

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Marvin Owens Dancer a/k/a Marvin Dancer appeals his two

convictions for aggravated robbery with a deadly weapon.  We affirm.

In the early morning hours of November 13, 2005, Javier Sanchez and

five friends (altogether, three men and three women) were socializing in

Sanchez's Fort Worth apartment when there was a knock at the door and two

---

[1] *See* TEX. R. APP. P. 47.4.

or three intruders forced their way inside. One of the intruders, who had a loaded gun, demanded money and hit Sanchez and one of his male friends with the gun. Sanchez's group eventually disarmed their assailant, and the other intruder(s) fled. When Officer John Lucas responded to Sanchez's apartment, he found appellant lying injured on the floor.

Following a three-day trial, a jury convicted appellant of two counts of aggravated robbery with a deadly weapon. The trial court sentenced appellant to two forty-year sentences, to be served concurrently.

In his first point, appellant contends that the trial court improperly refused to strike the testimony of two witnesses and grant a mistrial because the State failed to produce the witnesses' written statements after their direct examinations.

Texas Rule of Evidence 615 requires a trial court to order the production, after a witness has testified on direct examination, of the witness's written statement relating to the matter testified and provides sanctions if the party so ordered fails to comply:

> **(a)  Motion for Production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and

2

that relates to the subject matter concerning which the witness has testified.

> . . . .

> **(e) Sanction for Failure to Produce Statement.** If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.[2]

The purpose of this rule is to assist the defendant to cross-examine and possibly impeach a witness.[3]

All six witnesses who were in Sanchez's apartment gave Officer Lucas written statements shortly after the offense occurred.  After Sanchez testified on direct examination, appellant requested Sanchez's written statement under Rule 615.  The prosecutor responded that he had never received the witness's written statement and that four of the six statements were missing and believed to have been lost by the police.  Appellant moved for production of the

---

[2] TEX. R. EVID. 615.

[3] *See Enos v. State*, 909 S.W.2d 293, 295 (Tex. App.—Fort Worth 1995) (referring to *Gaskin* rule), *pet. dism'd, improvidently granted*, 959 S.W.2d 620 (Tex. Crim. App. 1997).  Texas Rule of Criminal Evidence Rule 614(a) expanded and codified the *Gaskin* rule and was recodified in 1998 as Texas Rule of Evidence 615.  *See*, *e.g.*, TEX. R. EVID. 615 cmt.; *Enos v. State*, 889 S.W.2d 303, 304 n.2 (Tex. Crim. App. 1994).

statements under Rule 615(a) and for sanctions under Rule 615(e).[4]  The trial

court denied both motions.  Later, following the direct examination of Daniel

Ceron—another eyewitness—appellant made similar requests, and the trial court

again denied relief.[5]

Near the end of the trial, appellant called Detective Darren Darracq.

Detective Darracq responded to the scene approximately two and a half hours

after the offenses and received the six written statements from Officer Lucas.

Detective Darracq acknowledged to the jury that he had lost four of the

statements and, although he had looked for them, had no idea where they

were.[6]

By its plain language, Rule 615(a) only requires a party to produce

witness statements that are in "their possession."[7]  The State argues that it did

---

[4] At trial, the grounds for appellant's objections and motions were Rule 615, confrontation, and cross-examination.  On appeal, however, he limits his argument to Rule 615.

[5] Sanchez and Ceron also gave lengthy audio-taped statements on the night of the aggravated robberies, albeit several hours after making the written statements.  Appellant was provided with these statements.

[6] In the trial court and on appeal, appellant has disclaimed any suggestion of prosecutorial misconduct and has not challenged the detective's testimony that he lost the statements accidentally and never gave them to the prosecution.

[7] TEX. R. EVID. 615(a).

4

not "possess" the statements and, therefore, did not "elect" not to produce them.  We agree.

In *Jenkins v. State*, the Texas Court of Criminal Appeals held that Rule 615 only requires a prosecutor to produce witness statements that are "in the prosecutor's possession" or in the possession of the "prosecutorial arm of the government."[8]  When interpreting Rule 615 in the past, we have stated that a party possesses a statement "if it is within [the party's] control or readily accessible,"[9] or in the party's "actual or constructive possession."[10]

The evidence shows that at the time of trial the statements were not in the possession of the State.  The prosecutor affirmatively represented to the trial court that he was never given Sanchez's or Ceron's written statement.  Detective Darracq's testimony that he lost the statements and could not find them corroborated the prosecutor's representations.  The undisputed evidence

---

[8] 912 S.W.2d 793, 819 (Tex. Crim. App. 1995) (op. on reh'g); *see also Olivas v. State*, No. 08-99-00442-CR, 2000 WL 1867971, at *5 (Tex. App.—El Paso Dec. 21, 2000, no pet.) (not designated for publication) (concluding based on *Jenkins* that "possession" refers only to statements in the prosecutor's possession).

[9] *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.—Fort Worth 1995, pet. ref'd & pet. dism'd).

[10] *Williams v. State*, 940 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd); *Jordan v. State*, 897 S.W.2d 909, 918 (Tex. App.—Fort Worth 1995, no pet.).

showed that neither he nor the prosecutor physically possessed the statements at the time they were requested, nor were the statements within their control or readily accessible.[11] We, therefore, hold that Sanchez's and Ceron's written statements were not in the State's possession for purposes of Rule 615.[12]

Section (e) of the rule requires sanctions "[i]f the other party elects not to comply with an order to deliver a statement to the moving party."[13] The trial court, however, found that the State did not possess the statements and thus the court never ordered the State to deliver them to appellant. Because the trial

---

[11] Additionally, the trial court found that the recorded statements were made contemporaneously with the written statements and speculated that they were probably more detailed than the written statements. No one disputed the trial court's recitation of the facts.

[12] *See Amunson v. State*, 928 S.W.2d 601, 608 (Tex. App.—San Antonio 1996, pet. ref'd) (holding that rule was not violated where officer stated he made a report but was "unable to find it" because there was no report to tender to counsel); *see also Olivas*, 2000 WL 1867971, at *5 (holding officers' handwritten statements and evidence forms that were kept at drug task force office and had never been provided to the prosecutor were not in the prosecutor's possession); *Baker v. State*, No. 05-97-00986-CR, 1999 WL 418314, at *6 (Tex. App.—Dallas June 24, 1999, pet. ref'd) (not designated for publication) (holding that State was not required to produce statements that were not in its possession at the time of request because they had been destroyed pursuant to document retention policies).

[13] TEX. R. EVID. 615(e).

6

court never ordered the State to deliver the statements, the State did not elect not to comply with an order to deliver the statements to appellant.[14]

For these reasons, we hold that the trial court properly denied appellant's Rule 615 motions for production and for sanctions. We overrule appellant's first point.[15]

In his second point, appellant argues that the trial court improperly allowed the State to bind a juror in voir dire. The allegedly objectionable question dealt with whether the State would be required to produce in evidence a weapon in order to establish aggravated robbery:

[The State]: . . . if there's been testimony that there's a weapon and you believe that testimony beyond a reasonable doubt, does that mean, in fact, that the State would have to produce the weapon?

[Appellant]: I'm going to again object to the attempt to bind this particular juror.

. . . .

[14] *See Marquez v. State*, 757 S.W.2d 101, 103 (Tex. App.—San Antonio 1988, pet. ref'd).

[15] Although appellant understandably wanted the missing statements to assist him in cross-examining and possibly impeaching Sanchez and Ceron, there is no indication that the statements were exculpatory, and appellant did not advance a *Brady* objection in the trial court. We express no opinion as to the outcome of a *Brady* analysis under these facts.

7

[The State]:    . . . Is there anyone here that would require the State to have the weapon?  Anyone on this panel?

[Appellant]:    Judge, again, I'm going to object to asking that question.  Still an attempt to bind now the entire panel.

THE COURT:    And I'll sustain it as phrased of would they require.  That would all depend on the facts and the circumstances of an individual case.

[Appellant]:    Your Honor, we'd ask for an instruction to disregard.

THE COURT:    Well, no one answered the question, so I've ruled on the question as phrased.  No one can ask you—disregard the way he phrased it, just as a precaution.  No one can ask you what you will do until you hear the evidence.  It's what you can keep an open mind to do in an appropriate case based upon what the facts show.  Does everyone understand that distinction?

SEVERAL PANEL MEMBERS:  Yes.

THE COURT:    Because if the lawyers can sit here and say these are the facts, will you do this, if those are the facts, would you do that, well, the lawyers would be here for three days asking those questions, as they should, if you could give them answers and then try the case here in voir dire instead of try the case through testimony.  On the other hand, there are rules that both sides are entitled to rely on you to follow which is to evaluate the testimony, render a true verdict based on the evidence and decide if there's proof or not—proof of any or all elements of the offense.  And if proved beyond a reasonable doubt, the State's entitled to a guilty verdict.  If not proven beyond a reasonable doubt as to any or all elements, the Defense is entitled to a not guilty.  Does everyone understand that basic premise?

8

SEVERAL PANEL MEMBERS: Yes, sir.

[Appellant]:      To perfect the record, we move for mistrial.

THE COURT:      That will be denied.

When the trial court sustains an objection and instructs the jury to disregard[16] but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.[17]  In determining whether the trial court abused its discretion in denying the mistrial, we balance three factors:  (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct.[18]  Only in extreme circumstances, when the prejudice is incurable or the comment is "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required.[19]  Generally, a prompt instruction to

---

[16] Appellant claims that an instruction to disregard was requested but not given.  Based on the exchange quoted above, however, we conclude that the trial court did instruct the jury to disregard the prosecutor's question.

[17] *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

[18] *Id.*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[19] *Hawkins*, 135 S.W.3d at 77; *see also Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

disregard will cure error associated with an improper question or comment, including a question posed at voir dire.[20]

To begin with, we note that none of the jurors responded to the allegedly improper commitment question. Further, nothing in the record suggests that this is an "extreme circumstance" where the prejudice, if any, was incurable, and appellant does not argue that this is such a case. Accordingly, we hold that the instruction to disregard cured the error, if any, and the trial court did not abuse its discretion in denying appellant's motion for mistrial.[21] We overrule appellant's second point.

In his third point, appellant argues that the trial court improperly failed to grant a mistrial to cure the State's improper jury argument which constituted an attack upon appellant over the shoulders of his counsel.

During the State's rebuttal closing argument at the guilt-innocence phase, the prosecutor denied that identity of the assailant was an issue, arguing, "He [the defense attorney] knows who it was. He knows who was carried out on

---

[20] *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Hamilton v. State*, No. 02-04-00435-CR, 2005 WL 3008449, at *2 (Tex. App.—Fort Worth Nov. 10, 2005, pet. ref'd) (mem. op., not designated for publication); *Calderon v. State*, 847 S.W.2d 377, 380 (Tex. App.—El Paso 1993, pet. ref'd).

[21] *See Calderon*, 847 S.W.2d at 380–81 (holding that instruction to disregard cured error from prosecutor's improper comment during voir dire).

that stretcher. It was the Defendant." The trial court sustained appellant's objection and instructed the jury to disregard the argument but denied appellant's motion for mistrial.

Applying the law discussed above, we conclude that the trial court did not abuse its discretion in refusing to grant a mistrial. The prosecutor's objectionable argument was not so extreme or manifestly improper that an instruction to disregard could not cure any possible prejudicial effect.[22] Further, the trial court instructed the jury to disregard the argument and explained that "what the lawyers say about each other or about the evidence is not evidence." The jurors indicated that they understood the trial court's instruction by nodding and answering "[y]es, sir." The prosecutor then restated the argument without objection. Finally, the evidence of guilt was strong. The three testifying witnesses' accounts of the aggravated robberies were consistent, and they identified the man who had assaulted them with a gun as the man who was lying on the floor of the apartment when Officer Lucas arrived.[23]

---

[22] *See Orona v. State*, 791 S.W.2d 125, 127–30 (Tex. Crim. App. 1990) (concluding beyond a reasonable doubt that error in prosecutor's accusation that defendant's attorneys "know how to argue to get people off" was harmless in that statement was not so prejudicial, under facts of the case, as to call for reversal).

[23] Although the witnesses did not identify appellant in the courtroom as their assailant, Officer Lucas identified appellant as the man he found on the

11

For these reasons, we conclude that the trial court did not abuse its discretion in refusing to grant a mistrial, and we overrule appellant's third point.

Having overruled all of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

DELIVERED: April 3, 2008

---

floor of the apartment.