

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00276-CR

———————————————————

ALEJANDRO GARCIA, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1638251

Before Kerr, Birdwell, Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

After his niece made an outcry of sexual abuse, Appellant Alejandro Garcia was charged by indictment with one count of continuous sexual abuse of a child (Count One), two counts of aggravated sexual assault of a child (Counts Two and Three), and two counts of indecency with a child by contact (Counts Four and Five). *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a), 22.021(a)(2)(B). Following a trial, a jury acquitted Garcia of Counts One and Two and convicted him of the remaining counts.

On appeal, Garcia argues that the trial court erred by (1) denying his motion for a mistrial after the State elicited testimony from the forensic interviewer regarding multiple outcries of abuse in contravention of the trial court's pretrial ruling; (2) admitting certain out-of-court statements that the victim and the victim's mother had made to the sexual assault nurse examiner (SANE) over Garcia's hearsay and Confrontation Clause objections; (3) denying his motion for a mistrial after the jury initially failed to return a unanimous verdict on Count One; (4) admitting certain text messages exchanged between Garcia and the victim over his Confrontation Clause, hearsay, and lack-of-authentication objections; and (5) inaccurately reflecting in the written judgments the amounts of the orally pronounced fines on Counts Four and Five. Because we overrule all of Garcia's appellate points except for his last one regarding the incorrect fine amounts, we affirm the trial court's judgment on Count Three, modify the trial court's judgments on Counts Four and Five to correct the amounts of the fines imposed, and affirm those judgments as modified.

2

# I. BACKGROUND

In 2015, Mother moved into a house with her children (including the victim, six-year-old J.O.); her sister, S.M.; and her niece.[1] Garcia, who was S.M.'s boyfriend at the time, moved into the house the following year and eventually married S.M. Garcia seemed very nice at first, and J.O. would often go into his and S.M.'s bedroom to watch television and hang out. But as time went on, J.O. stopped liking him. In January 2018, when J.O. had just turned eight, Garcia and S.M. moved out of the house.

One morning in September 2018, J.O. woke up Mother around 5:30 a.m. and told her that Garcia had been in the house and had touched "her private areas." Mother got up and saw Garcia running out the back door. Mother confronted Garcia and then contacted the police. Two days after this incident, J.O. opened up further to Mother and told her that Garcia had touched her inappropriately "multiple times over a nine-month period."

In October 2018, Samantha Torrance, a forensic interviewer with Alliance for Children, interviewed J.O. During the interview, J.O. told Torrance about an incident in which Garcia had made her put her hand down his pants to touch his genitals, which J.O. described as "two plastic balls" and something that felt "like a cone."

---

[1]Because the victim was a minor at the time of the offenses, we use aliases to refer to her and her family members (other than Garcia). *See* Tex. R. App. P. 9.10(a)(3), (b).

After the forensic interview, J.O. underwent a SANE exam. During the examination, J.O. told the SANE, Pamela Simmons, about Garcia's sexual behavior towards her. She also told Simmons that Garcia had shown her a video on his phone depicting a female performing oral sex on a male.

Ultimately, Garcia was arrested and indicted for the five offenses outlined above. Garcia pleaded not guilty to all five offenses, and a jury trial was held. J.O. testified at trial and described numerous instances in which Garcia had touched her genitals or her anus or had instructed her to touch his genitals. Mother, Torrance, and Simmons also testified.

After hearing all the evidence, the jury convicted Garcia of one count of aggravated sexual assault of a child and two counts of indecency with a child by contact. Following a punishment trial, the jury assessed Garcia's punishment at forty years in prison and an $8,000 fine for the aggravated-sexual-assault-of-a-child offense and thirteen years in prison and an $8,000 fine for each of the indecency-with-a-child-by-contact offenses. The trial court sentenced him accordingly. This appeal followed.

## II.  DISCUSSION

On appeal, Garcia raises ten points, many of which are interrelated. We address each of these points in turn below.

### A.  POINTS ONE AND SIX: MOTIONS FOR MISTRIAL

In his first and sixth points, Garcia contends that the trial court abused its discretion by denying his motions for mistrial after (1) the State elicited testimony

4

from Torrance, the forensic interviewer, regarding multiple outcries of abuse in contravention of the trial court's pretrial ruling and (2) the jury initially returned a guilty verdict on Count One but one juror disclaimed the verdict when polled. We disagree.

### 1. Standard of Review and Applicable Law

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Under this standard, we must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Coble*, 330 S.W.3d at 292; *Marchbanks v. State*, 341 S.W.3d 559, 561 (Tex. App.—Fort Worth 2011, no pet.). "Generally, a prompt instruction to disregard will cure error associated with an improper question or comment . . . ." *Dancer v. State*, 253 S.W.3d 368, 372–73 (Tex. App.—Fort Worth 2008, pet. ref'd) (per curiam). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

### 2. Improper Question to Forensic Interviewer

In his first point, Garcia contends that the trial court abused its discretion by denying his motion for a mistrial based on an improper question that the State asked Torrance, the forensic interviewer.

5

### a. Relevant Background

After conducting a pretrial outcry-witness hearing, the trial court ruled that Torrance was an appropriate outcry witness for J.O.'s allegation that Garcia had instructed her to put her hand down his pants to touch his genitals but that Torrance was not an appropriate outcry witness for any other alleged instances of sexual abuse. Nevertheless, during Torrance's direct examination, the State asked whether J.O. had made "more than one outcry," and Torrance responded that J.O. had "disclosed about multiple instances" of abuse.

Garcia objected that this exchange violated the trial court's earlier outcry-witness ruling and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard the question and Torrance's answer, but it denied Garcia's motion for a mistrial.

### b. Analysis

On this record, we cannot say that the trial court abused its discretion by denying Garcia's motion for a mistrial. The trial court instructed the jury to disregard the objected-to question and answer. Garcia has not pointed to—nor have we found—any evidence in the record suggesting that the jury failed to follow the trial court's instruction. Thus, Garcia has not rebutted the presumption that the jury disregarded the objected-to question and answer. *See Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also Orr v. State*, 306 S.W.3d 380, 404 (Tex. App.—Fort Worth 2010, no pet.) (stating that reviewing courts

6

presume that the jury followed the trial court's instruction to disregard "in the absence of evidence that it did not"). Further, any potential prejudicial effect of Torrance's reference to "multiple instances" of sexual abuse was mitigated by the fact that J.O. had already testified regarding numerous occasions on which Garcia had sexually abused her. *See Castaneda v. State*, 694 S.W.3d 13, 20 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (concluding that the prejudicial effect of improper testimony was mitigated by the fact that the same information had been introduced without objection during complainant's testimony); *Morales v. State*, No. 04-02-00342-CR, 2003 WL 22715602, at *4–5 (Tex. App.—San Antonio Nov. 19, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that improper reference to outcry statement's contents had been cured because complainant had testified about this same information). And because Torrance's response was brief and nonspecific, its prejudicial effect was minimal to begin with. *See Castaneda*, 694 S.W.3d at 20.

We overrule Garcia's first point.

### 3. Nonunanimous Verdict

In his sixth point, Garcia contends that the trial court abused its discretion by denying his motion for a mistrial after the jury originally returned a guilty verdict on Count One, but upon polling, one juror stated that this was not his individual verdict. Garcia asserts that the trial court erred by directing the jury to return to the jury room and continue deliberations rather than declaring a mistrial. But the trial court did exactly what the Texas Code of Criminal Procedure prescribes in such a situation:

7

> The State and the defendant each have the right to have the jury polled, which is done by calling separately the name or identification number of each juror and asking the juror if the verdict is the juror's. If all jurors, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; *but if any juror answers in the negative, the jury shall retire again to consider its verdict.*

Tex. Code Crim. Proc. Ann. art. 37.05(a) (emphasis added). Under Article 37.05(a)'s plain language, once a juror stated during polling that the verdict was not his, the trial court had a mandatory duty to return the jury to the jury room to continue its deliberations. *See id.*; *see also* Tex. Gov't Code Ann. § 311.016(2) (clarifying that a statute's use of the term "shall" imposes a duty); *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002) ("The use of the word 'shall' generally indicates a mandatory duty."). We cannot conclude that the trial court abused its discretion by following this statutory dictate.[2]

We overrule Garcia's sixth point.

## B. POINTS TWO THROUGH FIVE: ADMISSION OF STATEMENTS TO SANE

In his second, third, fourth, and fifth points, Garcia contends that the trial court abused its discretion by allowing Simmons, the SANE who examined J.O., to testify regarding certain out-of-court statements that J.O. and Mother had made in connection with the sexual-assault examination.

---

[2]In any event, because the jury ultimately acquitted Garcia of Count One and because his motion for a mistrial was based solely on the jury's nonunanimous verdict on this count, he could not show that he was harmed by the denial of his mistrial motion. Thus, there was no reversible error. *See* Tex. R. App. P. 44.2.

8

Simmons testified that during the sexual-assault examination, J.O. told her that Garcia had touched her sexually with his hand, had touched her with his "front-middle part," had contacted her vagina with his penis, had kissed and licked her toes, and had showed her a video depicting a female performing oral sex on a male. In addition, Simmons testified that Mother had told her that "[f]our Sundays" before the examination, Garcia had touched J.O.'s leg from her thigh to her genitals after coming into their house in the early morning hours; that Garcia had engaged in sexual conduct towards J.O. multiple times over a nine-month period; that he had peed on J.O.'s bed on one occasion; and that he had tried to unzip J.O.'s pajamas on another occasion.

Garcia asserts that the trial court abused its discretion by admitting these statements because they are hearsay and because their admission violated his rights under the Sixth Amendment's Confrontation Clause. We disagree.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

9

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble*, 330 S.W.3d at 280. Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 2. Hearsay Analysis

"Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not admissible unless a statute, a rule of evidence, or another rule prescribed under statutory authority provides otherwise. Tex. R. Evid. 802.

Under Rule 803(4), a hearsay statement is admissible if it is made for—and is reasonably pertinent to—medical diagnosis or treatment and describes medical history, past or present symptoms or sensations, their inception, or their general cause. Tex. R. Evid. 803(4); *Lumsden v. State*, 564 S.W.3d 858, 883 (Tex. App.—Fort Worth 2018, pet. ref'd). Rule 803(4) is premised on the patient's strong and selfish motive to tell the truth to receive proper medical diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 580 (Tex. Crim. App. 2008). Thus, to establish this exception,

10

the proponent of the evidence generally must show that the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements. *Id.* at 588–89. The proponent must also show that the statements were pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the patient. *Id.* at 591.

This court has recognized that "[t]he object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). Texas courts have acknowledged that a patient's statements made to a medical professional during a SANE examination fall within the Rule 803(4) exception to hearsay. *See Gutierrez v. State*, 630 S.W.3d 270, 279–80 (Tex. App.—Eastland 2020, pet. ref'd); *Sharp v. State*, 210 S.W.3d 835, 839 (Tex. App.—Amarillo 2006, no pet.); *see also Lumsden*, 564 S.W.3d at 888 ("[W]e held that [the SANE's] testimony was admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. Her handwritten report is similarly admissible under the medical-diagnosis-or-treatment exception to the hearsay rule."). A parent's statements to a medical professional in connection with a SANE examination may also fall within the Rule 803(4) hearsay exception if they are pertinent to the victim's diagnosis and treatment. *See Castillo v. State*, No. 07-23-

11

00193-CR, 2024 WL 3958428, at \*10 (Tex. App.—Amarillo Aug. 27, 2024, no pet.) (mem. op., not designated for publication); *Delavega v. State*, No. 05-21-00229-CR, 2022 WL 1564548, at \*4 (Tex. App.—Dallas May 17, 2022, no pet.) (mem. op., not designated for publication).

Because Mother's and J.O.'s statements to Simmons describing Garcia's acts of sexual abuse were pertinent to J.O.'s medical diagnosis and treatment, they fall within the Rule 803(4) exception. *See Gutierrez*, 630 S.W.3d at 279–80; *Sharp*, 210 S.W.3d at 839; *Beheler*, 3 S.W.3d at 188; *see also Castillo*, 2024 WL 3958428, at \*10; *Delavega*, 2022 WL 1564548, at \*4. Further, J.O. and Mother both testified without objection regarding the various acts of sexual abuse that Garcia had committed against J.O. Thus, even if the Rule 803(4) exception did not apply, the admission of J.O.'s and Mother's out-of-court statements to Simmons would not be reversible error. *See Valle*, 109 S.W.3d at 509–10; *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd); *see also Estes v. State*, 487 S.W.3d 737, 757 (Tex. App.—Fort Worth 2016) (holding that any error in the admission of sexual-assault nurse's hearsay testimony was not reversible because it "largely synced up" with the victim's testimony), *rev'd on other grounds*, 546 S.W.3d 691 (Tex. Crim. App. 2018); *Bensend v. State*, No. 02-11-00110-CR, 2012 WL 4815467, at \*1 (Tex. App.—Fort Worth Oct. 11, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding that any error in admitting the testimony of a SANE concerning statements that the

complainant had made was harmless because the "complainant herself had previously testified to [the] same facts").

We overrule Garcia's third and fifth points.

### 3. Confrontation Clause Analysis

The Sixth Amendment's Confrontation Clause, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1357, 1359 (2004); *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010) (citing U.S. Const. amend. VI). "[T]he most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011). Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374).

"[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Adkins v. State*, 418 S.W.3d 856, 861–62 (Tex.

App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013)). A court considers the totality of the circumstances in determining whether a statement is testimonial. *Clark v. State*, 282 S.W.3d 924, 931 (Tex. App.—Beaumont 2009, pet. ref'd).

Generally, we review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). But when, as here, the admission of evidence involves a constitutional legal ruling—in this case, whether a statement is testimonial or nontestimonial for Confrontation Clause purposes—we give almost total deference to the trial court's determination of historical facts, but we review de novo the trial court's application of the law to those facts. *See Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 742 (applying hybrid standard of review to issue of whether statement was testimonial).

Because J.O.'s and Mother's complained-of statements to Simmons—a medical professional—were made for the primary purpose of medical diagnosis and treatment, not developing facts for later litigation, they do not constitute testimonial hearsay. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S. Ct. 2527, 2533 n.2 (2009) (stating that "medical reports created for treatment purposes" are not testimonial); *Malone v. State*, No. 02-10-00436-CR, 2011 WL 5118820, at *3 (Tex. App.—Fort Worth Oct. 27, 2011, no pet.) (mem. op., not designated for publication) (holding that a victim's statement to an on-scene EMT that the defendant had kicked her was not testimonial for Confrontation Clause purposes); *Martinez v. State*, No. 08-09-00065-

14

CR, 2010 WL 2619647, at *4 (Tex. App.—El Paso June 30, 2010, no pet.) (not designated for publication) (holding similarly and collecting similar cases); *see also Lollis v. State*, 232 S.W.3d 803, 807 (Tex. App.—Texarkana 2007, pet. ref'd) ("[W]hen a forensic or investigatory motive predominates, the resulting statements are testimonial; when therapeutic or healing motive predominates, statements are not testimonial.").

Further, both J.O. and Mother testified at trial and were available for cross-examination. Thus, even if their out-of-court statements to Simmons had been testimonial, the statements' admission would still not have violated Garcia's confrontation rights. *See Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9; *see also Wells v. State*, 558 S.W.3d 661, 667 (Tex. App.—Fort Worth 2017, pet. ref'd) (holding that defendant's confrontation rights were not violated by medical professional's testimony detailing complainant's out-of-court statements made during sexual-assault examination because the complainant testified at trial and was subjected to cross-examination); *Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi–Edinburg June 15, 2017, no pet.) (mem. op., not designated for publication) (holding testimony by nurse examiner's supervisor about patient's "verbatim" medical history reflected in nurse's sexual-assault report did not violate Confrontation Clause because patient was declarant and because patient was subject to cross-examination).

We overrule Garcia's second and fourth points.

15

## C. POINTS SEVEN, EIGHT, AND NINE: ADMISSION OF TEXT MESSAGES

In his seventh, eighth, and ninth points, Garcia contends that the trial court abused its discretion by admitting certain text messages between J.O. and him that the police extracted from J.O.'s cellphone. In the lengthy text exchange, Garcia repeatedly called J.O. beautiful and asked for selfies of her smiling. Garcia asserts that the text messages were not sufficiently authenticated, were inadmissible hearsay, and violated his confrontation rights. We disagree.

### 1. Authentication Analysis

To authenticate or identify an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Tex. R. Evid. 901. "In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims," and therefore, "the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). "The trial court's determination of whether the proponent has met this threshold requirement is subject to appellate review for an abuse of discretion and should not be countermanded so long as it is within the zone of reasonable disagreement." *Id.*

With a text message, the association of a cell phone number with a particular person "may be quite strong," but that association alone "might be too tenuous" to

16

link a text message to a purported author because "cell phones can be purloined." *Id.* at 601. Thus, one way a message's authenticity may be shown is through a sponsoring witness's testifying to an association between a cell phone number and the purported author of the message combined with other circumstances that "bridge the logical gap and permit a proper inference that the purported author sent the message." *Id.* at 602. The "other circumstances" may include "the message's 'appearance, contents, substance, internal patterns, or other distinctive characteristics,' which considered in conjunction with other circumstances support a conclusion that a message indeed emanated from the purported author." *Id.* (quoting Tex. R. Evid. 901(b)(4)).

Here, we cannot say that the trial court abused its discretion by determining that the State met its threshold burden to supply sufficient facts to support a reasonable jury determination that the complained-of text messages were authentic. Mother testified that the text messages admitted as State's Exhibit 4 "fairly and accurately depict[ed] the content of the messages" that she had previously seen on J.O.'s phone and that she recognized the two telephone numbers reflected in the exhibit as belonging to J.O. and Garcia. In addition, the sender referred to himself as "Uncle Alex"; referred to J.O. as "my . . . niece" and as "Juice," her family nickname; and referenced details that only a family member would know, such as the fact that J.O. had taken a plane trip to Florida. Because the text messages' content was sufficient to "bridge the logical gap" and allow a reasonable juror to infer that Garcia had sent them, the trial court did not abuse its discretion by determining that the State

17

had met its burden under Rule 901. *See id.*; *see also Nash v. State*, No. 02-22-00165-CR, 2023 WL 5615807, at *8 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op., not designated for publication) (holding that text messages' content "constituted additional circumstantial evidence" that they had been sent by the appellant, who was the victim's husband, because "[m]ultiple messages stated that the sender intended to divorce [the victim]," one text referenced "'our' vehicle," and another text referenced the sexual assault in question).

We overrule Garcia's ninth point.

### 2. Hearsay Analysis

As noted, "hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Here, the text messages were offered to show the nature of Garcia and J.O.'s relationship and Garcia's inappropriate grooming behavior, not for the truth of any statements made therein. Thus, they are not hearsay.[3] *See Ellis v. State*, 517 S.W.3d 922, 929–30 (Tex. App.— Fort Worth 2017, no pet.) (holding that trial court had not abused its discretion by admitting text messages over appellant's hearsay objection because their relevance

---

[3]Even if the text messages had been offered to prove the truth of the matter asserted, because they were properly authenticated, all of the messages sent from Garcia to J.O. would constitute admissions by a party-opponent and would therefore not qualify as hearsay. *See* Tex. R. Evid. 801(e)(2)(A); *see also Jones v. State*, 466 S.W.3d 252, 265–66 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding that text messages constitute admissions by a party-opponent if there is some evidence indicating that the defendant was responsible for their content).

"was not in any way dependent upon the truth of the messages themselves"); *see also Velasquez v. State*, 07-21-00154-CR, 2023 WL 131113, at \*3 (Tex. App.—Amarillo Jan. 9, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that text message was not hearsay because it was offered for the purpose of showing that three specific people—including the appellant—had been communicating using certain phone numbers, not "to prove the truth of the message's contents"); *cf. Parks v. State*, No. 02-22-00011-CR, 2023 WL 2325506, at \*3–6 (Tex. App.—Fort Worth Mar. 2, 2023, no pet.) (mem. op., not designated for publication) (detailing text messages between the appellant and the victim that had been admitted as evidence of appellant's grooming behavior in attempted-sexual-performance-of-a-child case).

We overrule Garcia's eighth point.

### 3. Confrontation Clause Analysis

As noted, "[t]he Confrontation Clause only applies to statements that are testimonial in nature." *Rosenbusch v. State*, No. 03-18-00096-CR, 2018 WL 6837741, at \*1 (Tex. App.—Austin Dec. 28, 2018, no pet.) (mem. op., not designated for publication); *accord Avant v. State*, 499 S.W.3d 123, 126 (Tex. App.—San Antonio 2016, no pet.). Here, the text messages exchanged between Garcia and J.O. were completely informal, and nothing in the record suggests that their primary purpose was to develop facts for a criminal investigation. Thus, they are not testimonial, and

their admission did not violate Garcia's confrontation rights.[4] *See Magee v. State*, No. 14-23-00396-CR, 2024 WL 3980248, at *10 (Tex. App.—Houston [14th Dist.] Aug. 29, 2024, pet ref'd) (mem. op.) (holding that informal text messages obtained from complainant's cellphone were not testimonial); *Walter v. State*, 581 S.W.3d 957, 981 (Tex. App.—Eastland 2019, pet. ref'd) (holding that text messages' informal nature "weigh[ed] against a finding that they [were] testimonial statements").

We overrule Garcia's seventh point.

## D. POINT TEN: FINE AMOUNTS

In his tenth point, Garcia complains that the fine amounts reflected in the written judgments for Counts Four and Five are incorrect. The State concedes the error, and we agree.

As noted, the jury assessed Garcia's punishment on Counts Four and Five at thirteen years in prison and an $8,000 fine. The trial court orally pronounced Garcia's sentence in accordance with the jury's assessment. Nevertheless, the trial court's written judgments for Counts Four and Five reflect assessed fines of $8,100.

The trial court's oral pronouncement of a sentence controls over its written judgment to the extent that they conflict. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004); *Mitchell v. State*, No. 02-17-00112-CR, 2017 WL 6759032, at *1

---

[4]Because J.O. testified at trial and was available for cross-examination regarding the text messages that she had sent, those messages' admission did not violate Garcia's confrontation rights. *See Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9.

(Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op., not designated for publication). Accordingly, we sustain Garcia's tenth point and modify the judgments on Counts Four and Five to reflect assessed fines of $8,000. *See* Tex. R. App. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that an appellate court has the authority to reform a judgment to make the record speak the truth); *Mitchell*, 2017 WL 6759032, at *1 (modifying written judgment to delete fine because it had not been orally pronounced).

## III. CONCLUSION

Having overruled Garcia's first nine points and having sustained his tenth point, we affirm the trial court's judgment on Count Three, modify the trial court's judgments on Counts Four and Five to reflect assessed fines in the amount of $8,000, and affirm those judgments as modified.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 14, 2025